Pedro ROMERO, et al., Plaintiffs,

v.

Nicholas F. BRADY, et al., Defendants.

**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, et al., Plaintiffs,**

v.

Nicholas F. BRADY, et al., Defendants.

**AMERICAN POSTAL WORKERS UNION, AFL–CIO, et al., Plaintiffs,**

v.

Nicholas F. BRADY, et al., Defendants.

**Civ. Nos. 89–0412 (JAF), 90–1117 (JAF) and 90–1173 (JAF).**

United States District Court,
D. Puerto Rico.

May 24, 1991.

Robert G. Mullendore, William C. Watt, Mullendore & Tawney, Missoula, Mont., for Pedro Romero, et al. and COLA Defense Committee of P.R.

Jossie Yunque López, Eddie Ramirez & Associates, Charles A. Hobbie, Deputy Gen. Counsel, Mark D. Roth, Gen. Counsel, American Federation of Government Employees, Washington, D.C., for American Federation of Government Employees.

Susan L. Catler, O'Donnell, Schwartz & Anderson, Washington, D.C., for American Postal Workers.

John J. McCarthy, Shirley D. Peterson, Edward J. Snyder, U.S. Dept. of Justice, Washington D.C., for Nicholas F. Brady, et al. and the U.S.

Engadí Charneco–Barreto, Atty., Antonio Fiol Matta, Director, Federal Litigation Div., Héctor Rivera Cruz, Secretary of Justice, Dept. of Justice, Com. of Puerto Rico, San Juan, Puerto Rico, for Com. of Puerto Rico.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiffs are federal employees performing their duties in Puerto Rico.[1] Plaintiffs are all recipients of a Cost-of-Living Adjustment (COLA), a benefit paid to federal government employees stationed at locations outside the continental United States. The COLA in Puerto Rico adds 10% to some categories of federal government salaries. The COLA is exempt from taxation under federal law, but is taxable under the laws of Puerto Rico. Pursuant to an agreement between the Commonwealth of

---

1. Three cases have been filed making essentially the same allegations against the Secretary of the Treasury by three different groupings of federal employees. *Pedro Romero v. Brady,* Civil No. 89–0412 (individual federal employees receiving COLA); *American Postal Workers Union, AFL–* *CIO, v. Brady,* Civil No. 90–1173 (Postal workers union, for members); *American Federation of Government Employees v. Brady,* Civil No. 90–1117. We exercise our power to consolidate these matters for full disposition in this opinion. Fed.R.Civ.P. 42(a).

Puerto Rico and the Treasury Department of the United States, federal agencies in Puerto Rico withhold Puerto Rico taxes from their employees' paychecks, and then turn the withholdings over to Puerto Rico. The agencies withhold from both the base government salary and the COLA. Plaintiffs challenge the authority of the withholding agreement, at times generally, and at times specifically with reference to the COLA. We reject all challenges.

### Jurisdiction in the District of Puerto Rico

Our initial inquiry is whether we have jurisdiction over this matter. The Butler Act includes the following provision:

> No suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto Rico shall be maintained in the United States District Court for the District of Puerto Rico.

48 U.S.C. § 872. *Parker v. Agosto–Alicea*, 878 F.2d 557 (1st Cir.1989); *Shepard v. First Federal Savings Bank of Puerto Rico*, 625 F.Supp. 1359 (D.P.R.1985). In *Parker*, the Circuit faced a challenge to the right of the Commonwealth to tax COLA. The Circuit agreed with the District Court that the matter fell within the Butler Act jurisdictional exception, and affirmed the District Court's dismissal of the case.[2]

■ In the case before us, the defendant Secretary of the Treasury has brought the Commonwealth in as a third-party defendant, on the theory that if this court were to order the restitution of any sums already handed over by federal officials to Puerto Rico, it is Puerto Rico who should pay them. We see that any attempt to regain tax revenue already collected by Puerto Rico, whatever the procedural posture of the action in which it occurs, is barred by the Butler Act. *Parker, supra.* Like the court in *Parker,* we have no jurisdiction over the claim against the Commonwealth. All causes of action against Puerto Rico are dismissed.[3]

■ The case between the plaintiffs and the Secretary of the Treasury itself, however, is distinguishable. The primary suit before us is not directed at the right of the Commonwealth to tax COLA as it was in *Parker*. The suit before us concerns only the authority of the federal agencies to withhold the tax on behalf of Puerto Rico's government. We believe the phrase "assessment and collection" refers to the acts taken by the Commonwealth of Puerto Rico in the implementation of its tax laws. We do not see that the ministerial act of withholding amounts to a "collection" of tax. The withholding is merely an interim procedure. The ultimate "collection" occurs at the point that the Commonwealth deems itself entitled, on the basis on a filed tax return, to consider the money its own.

Having taken jurisdiction, we go to the merits. As will become clear in the course of the opinion, there are no material facts in dispute. The parties differ only on the conclusions to be drawn from the facts as they stand. We reiterate that we will not engage in a review of the legality of Puerto Rico's action in taxing the COLA, since that matter is not properly before us, and would in any event be barred by the Butler Act provisions referred to above.

### The Statute

The relevant section of the applicable statute provides that:

**Withholding State income taxes**

(a) When a State Statute—

(1) provides for the collection of a tax either by imposing on employers generally the duty of withholding

---

**2.** Although it is not a matter before us, we note that the Circuit has added a gloss to the words of the statute which make an exception to the general rule of the statute where "no plain, speedy and efficient remedy [is] available in the courts of Puerto Rico." *Parker,* 878 F.2d at 559. The Circuit only agreed with the district court that dismissal was appropriate since there was an adequate remedy in the Puerto Rico courts.

**3.** We note that the Commonwealth does not claim to be protected from this suit as a matter of *res judicata* flowing from the *Parker* action, and we have not considered that as an alternative bar to the present action.

sums from the pay of employees and making returns of the sums to the State, . . . and

(2) imposes the duty or grants the authority to withhold generally with respect to the pay of employees who are residents of the State;

the Secretary of the Treasury, under regulations prescribed by the President, shall enter into an agreement with the State within 120 days of a request for agreement from the proper State official. The agreement shall provide that the head of each agency of the United States shall comply with the requirements of the State withholding statute in the case of employees of the agency who are subject to the tax and whose regular place of Federal employment is within the State with which the agreement is made.

.   .   .   .   .

(c) For the purpose of this section, "State" means a State or territory or possession of the United States.

5 U.S.C. § 5517.

■ Plaintiffs' first line of attack is to argue that Puerto Rico is not included within the definition of "State". In this statute "State" is defined to include states, territories, and possessions of the United States. While we are well aware that it is sometimes a question as to whether Puerto Rico should fit into the definition of "state" or "territory" in a given statutory or constitutional context, never has the Commonwealth been judicially defined in a way that would not be encompassed by the broad definition "State or territory or possession." *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 668–69, 94 S.Ct. 2080, 2084–85, 40 L.Ed.2d 452 (1974) (defining Puerto Rico for purposes of application of Due Process clauses); *Tenoco Oil Co. v. Dept. of Consumer Affairs*, 876 F.2d 1013 (1st Cir.1989) (same), except perhaps in the unique realm of maritime law, *Fonseca v. Prann*, 282 F.2d 153 (1st Cir.1960), *cert. denied*, 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 822 (1961); *Guerrido v. Alcoa Steamship Co.*, 234 F.2d 349 (1st Cir.1956), an exemption we find not applicable to the case at bar. *See,* J.R. Torruella, *The Su-preme Court and Puerto Rico: The Doctrine of Separate and Unequal* (1985). The First Circuit has held that the definition of Puerto Rico can vary according to the purposes of the federal statute at issue, *Córdova & Simonpietri Ins. Agency v. Chase Manhattan Bank, N.A.*, 649 F.2d 36 (1st Cir.1981), but has never suggested a definition of Puerto Rico which could not be covered by State, territory *or* possession.

Plaintiffs' only argument that Puerto Rico should not be included in the definition of State, territory, or possession for the purposes of the statute derives from their assertion that the Treasury Department rejected withholding agreement requests by Puerto Rico and/or Guam in 1953, 1972, and 1983. The basis for the Treasury Department's refusal to grant such agreements to Puerto Rico and Guam was supposedly on the basis of some legislative history which the Department interpreted to indicate that Congress had not meant to include "territory" in the statute, but that it had been left there by mistake. We think that statutory analysis begins with the plain meaning of the statute, and when the meaning is clear, it ends there. The statute says that "State" includes any State or territory or possession. We think that the Treasury Department's former reading of the statute was misguided. We think the Department's 1988 decision to reverse itself and include Puerto Rico within the statute was correct. Plaintiff urges us to hold the Department to their former, misguided interpretation of the statute, without offering any independent basis for arguing that Puerto Rico should be defined out of the statute in this particular case. We find that the statute applies to Puerto Rico. Since Puerto Rico has its own statute which imposes a withholding requirement generally on private employers, Title 13, Laws of Puerto Rico Annotated § 3141, we find that 5 U.S.C. § 5517 fully authorizes the Secretary of the Treasury to enter into an agreement with Puerto Rico under which federal agencies will withhold Commonwealth taxes, including Commonwealth

taxes on COLA.[4]

The authorization is limited by the provision that the agreement shall be made "under regulations prescribed by the President." In Executive Order 11997 (June 22, 1977, 42 Fed.Reg. 31759), President Carter set out the specific directives regarding the agreements. Plaintiffs argue that since the President's Order uses the word "state" and does not include Puerto Rico, the President's Order does not authorize an agreement with Puerto Rico. We find no merit in that argument. The President's Order by its very terms derives from the authority of section 5517. Therefore, the definition of "state" must be the same as defined in section 5517, which includes Puerto Rico for the reasons discussed above. An agreement with Puerto Rico is authorized by statute, and by the Presidential Order issued pursuant to that statute.

We now go on to determine whether the agreement in fact entered into was valid and in fact is broad enough to cover COLA.

### Procedural Irregularities

■ Plaintiffs complain that the agreement entered into is invalid since it contains no date "when tax withholding shall begin" as that phrase is used in the Executive Order. In fact, the agreement says that it "[s]hall be effective on the date signed by the last party to execute the agreement." The Secretary of the Treasury notified all agency heads in Puerto Rico that the withholding would have to be implemented within ninety days of the signing date. Plaintiffs complain that the withholding was put into effect at different times by different agencies. Even assuming that to be the case, we cannot see that any delay in individual agencies in implementing the withholding in any way impacts on the legality of the withholding procedures themselves, nor does the fact that the ninety-day "implementation" period is not specifically noted in the agreement.

■ Plaintiffs also complain that the Commonwealth and the Treasury Department did not follow applicable Treasury Department regulations when entering into the withholding agreement at issue here. They argue, first, that 31 C.F.R. § 215.4(a) requires that the request by a state (in this case Puerto Rico) to the Treasury Department be accompanied by "[c]opies of all applicable State laws ... and implementing regulations, instructions, and forms[ ]" and that no such copies were sent by Puerto Rico along with its request, and second, that the request must be addressed to the "Fiscal Assistant Secretary." The agreement is a contract between the United States Department of the Treasury and the Commonwealth of Puerto Rico. Regulations such as the one requiring submission of the laws of the entity seeking an agreement, or specifying an addressee, are obviously drafted for the convenience of the Treasury Department itself. Failure to observe such regulations might provide a legal basis for the Department to refuse to enter into an agreement. That the Department might dispense with such a requirement in a given case, however, does not render the agreement voidable by a taxpayer who is subject to the withholding done as a result of the agreement. The plaintiffs here have no standing to challenge the procedural steps which led to the culmination of an agreement between the two sovereigns, so long as the agreement itself is validly authorized in its substance. They suffer no harm because the request was addressed to one individual rather than another, nor because the Treasury Department was required to research Puerto Rico law on its own rather than having copies of the laws attached to the request.

### Regulation Definitions

■ Returning to substance, plaintiffs look to several of the definitions contained in Treasury Department regulations to prove the invalidity of the agreement. The

---

**4.** We note that at the time that the agreement was entered into, November 29, 1988, Puerto Rico law itself exempted federal employees in Puerto Rico from withholding. Those exemp-

tions were done away with by P.R. Act No. 37, Article 3, 1st Ord. Sess. (July 28, 1989), thereby eliminating any infirmity in the agreement that might otherwise have existed.

withholding agreement incorporates the definitions of the Treasury Department regulations. "The terms used in this agreement shall have the meanings defined in 31 C.F.R. § 215.2." That section of the C.F.R. defines "State" to mean a "State of the United States or the District of Columbia unless otherwise specified." 31 C.F.R. § 215.2. Plaintiffs argue that the definition should not include Puerto Rico. Plaintiffs therefore reach the patently absurd conclusion that we should interpret the agreement between Puerto Rico and the Treasury Department as precluding an agreement between Puerto Rico and the Treasury Department. It is the position of plaintiffs that the definition of "State" in the C.F.R., incorporated into the agreement, renders the agreement itself a legal impossibility. In the words of the plaintiffs: "[U]nder the express terms of Part 215 and of the withholding agreement itself, there exists no authority for entering into such an agreement with the Commonwealth of Puerto Rico." (Docket Document No. 11, *Brief,* p. 20).

We reject this illogical tautology and instead find that the "State" for purposes of the C.F.R. is undoubtedly the same "State" as used in the statute under which this section of the C.F.R. was authorized, a definition of "State" which we have already found to include Puerto Rico.

■ Plaintiffs also point to the definition of "compensation" as it appears in the C.F.R. "*Compensation* as applied to employees of an agency and members of the Armed Forces means *wages* as defined in 26 U.S.C. 3401(a) and regulations issued thereunder." The definition of wages under section 3401(a) includes "all remuneration (other than fees paid to a public official) for services performed by an employee for his employer...." The Internal Revenue Code, however, specifically exempts COLA from "gross income" for purposes of federal tax liability. 26 U.S.C. § 912. It is plaintiffs' position that the exemption in the IRC of COLA from "gross income" also affects the definition of "wages" as defined by section 3401, and by reference, 31 C.F.R. § 215(2), and, by incorporation,

the agreement. We do not agree. The IRC merely exempts COLA from federal taxation. We are not concerned here with federal taxation, but with federal agency collection of withholding on the basis of *Commonwealth* taxation. The definition of "wages" in section 3401(a), which includes "all remuneration," is broad enough to encompass COLA.

That "compensation" includes the COLA is further supported indirectly by reference to the legislative history of 5 U.S.C. § 5520, the companion statute to section 5517, which allows for withholding agreements between cities or counties and the Federal Department of Treasury. Section 5520 also uses the phrase "compensation". In the legislative history to section 5520, it is clear that Congress intended a very broad meaning for that term:

> [I]t is the intent of the committee that the new section 5520 shall apply to all forms of taxes imposed upon the compensation of an employee including, but not limited to, taxes referred to as income, wage, payroll, earning or employment taxes.

H.R.Rep. No. 892, 93rd Cong., 2d Sess. 6 (1974); *see United States v. Denver,* 573 F.Supp. 686 (D.Colo.1983).

■ The broadly inclusive language in this House Report convinces us that Congress intended for federal agencies to withhold from employee paychecks whatever tax the local taxing body might devise, and that the withholding could be from whatever form of recompense that the federal employee might be receiving, regardless of whether *federal* tax liability would attach or not.

We see no reason to believe that the word "compensation" should be read to be any less broad in section 5517 than section 5520. We reject plaintiffs' argument that the references to 26 U.S.C. § 3401 in 31 C.F.R. § 215 indicates that sections 5517 and 5520 should be construed so narrowly so as not to include COLA when the legislative history directly relevant to the withholding provisions indicates an expansive interpretation of the power to enter into withholding agreements.

■ Plaintiffs' final argument with respect to the regulations is their contention that even if the agreement is in all other ways legal, it cannot be applied to the "federal judicial branch," and that at least employee/plaintiffs working for the federal judicial branch must be exempt from withholding. The issue is the definition of the word "agency". The word "agency", while defined to include the federal judiciary in section 5520, (the section which authorizes agreements between the United States Treasury and cities or counties on tax withholding), is left undefined in section 5517. The legislative history sheds no light on why agency was defined to include the judicial branch in section 5520 but not in section 5517, nor does it help to determine whether the judicial branch should be read into or out of the general section 5517 definition of agency. U.S.Code Cong. & Admin.News 1952 at 2433, 2474; U.S.Code Cong. & Admin.News 1959 at 2842–44.

In the regulations promulgated under sections 5517 and 5520, agency is defined in the following way:

> *Agency* means each of the executive agencies and military departments (as defined in 5 U.S.C. 105 and 102, respectively) and the United States Postal Service; and in addition, *for city or county withholding purposes only, all elements of the judicial branch.*

31 C.F.R. § 215.2(a) (second emphasis added). It is clear that the drafters of the regulations considered that the judiciary branch was included for purposes of agreements under section 5520 between cities or counties and the Treasury Department, but was excluded for purposes of agreements between Treasury and the states. While the regulations cannot be said to dictate the definition of the statute, their interpretation is generally accorded great weight since they are promulgated by the agency

entrusted with the interpretation and implementation of the statute at issue.[5]

In the case at bar, however, the very entity that drafted the regulations (the Secretary of the Treasury) and who appeared there to have endorsed a non-judiciary application of section 5517, now argues that it *does* have the authority to enter into an agreement with states (in this case Puerto Rico) which would bind the judicial branch, as well as executive agencies.[6] With the Secretary of the Treasury sending such mixed signals, we find ourselves on our own in interpreting the meaning of the word "agency" as it appears in section 5517.

Section 5517 was originally passed in 1952. Section 5520 was passed in 1974. Pub.L. No. 93–340, 93rd Cong., U.S.Code & Cong.News 1974 at 3450–54. While the drafters of 31 C.F.R. § 215 may have assumed that the inclusion in the later statute of an explicit reference to the judicial branch indicated that the omission of such a reference in the earlier statute indicated Congressional intent to exclude the judicial branch from section 5517, we believe this to be an erroneous assumption. There is no reason to think that Congress sought to extend withholding agreements regarding judicial salaries to counties or cities while *denying* such agreements to the states. We think the only reasonable conclusion is that the definition of "agency" as used in section 5517 is the same as the one as set out in detail in section 5520. We agree with defendant that another closely analogous statutory section is 5 U.S.C. § 5102, dealing with the pay and allowances of government employees which defines agency to include "the Administrative Office of the United States Courts." That section deals with judicial employees in their role as government wage earners. Since the section at issue here also deals with judicial branch employees in their role as govern-

---

5. Plaintiffs' argument here is not limited to just COLA withholding, but challenges the Puerto Rico agreement so far as it authorizes *any* withholding from judicial branch employees. And, since there is nothing in this argument which would be unique to Puerto Rico, plaintiffs' argument on this score could be applied to all state

agreements regarding withholding from all judicial employees on all compensation. It is, in short, a very broad-gauged attack.

6. The "agency" which administers the federal courts is the Administrative Office of the United States Courts.

ment wage earners, we think that the definition of the former fits well with the latter. We therefore hold that the agreements authorized by section 5517 can include withholding by the judicial branch as an employer.

■ But finding that the statute authorizes such agreements does not settle the dispute. As we have already pointed out in our exegesis of the statute itself, the regulations set out in 31 C.F.R. § 215 simply do not apply to judicial branch withholding. To the degree that the agreement between Puerto Rico and the Treasury Department is to be read to encompass withholding by the judicial branch, plaintiffs are correct that it falls outside the scope of 31 C.F.R. § 215. Plaintiffs argue that since judicial branch withholding by a state is not "authorized" by the regulations, such withholding is illegal. We disagree.

The statute allows the Secretary to enter into an agreement with a State "under regulations prescribed by the President". We see no requirement that the Secretary promulgate regulations governing every aspect of any such agreement. The fact that the Secretary did in fact promulgate regulations which govern agreements *not* encompassing the judicial branch in no way diminishes the Secretary's statutory power to enter into agreements which *do* encompass withholding for the judicial branch. In other words, the Treasury Department/Puerto Rico accord is drawn pursuant to 31 C.F.R. § 215 so far as it is to be applied to the non-judicial agencies in Puerto Rico. So far as it is to be applied to the judicial branch, the Secretary's authorization derives directly from the statute without specific regulatory directive.

Having found that agreements for the withholding of state taxes by the judicial branch are statutorily authorized, and that such an agreement can be valid even though outside the regulations promulgated for application to non-judicial withholding, we are faced with the problem that this particular agreement refers back to the regulations for its definition section. The contract specifically states that "[t]he terms used in this agreement shall have the

meanings defined in 31 C.F.R. § 215.2." Since section 215.2 defines agency to include the judicial branch for "city or county withholding purposes only, ...," plaintiffs argue that the agreement cannot be applied to the judicial branch.

■ First, we find that the plaintiffs here do not have standing to challenge the interpretation of whether judicial branch employees are covered by the contract. Both signatories to this agreement are in accord that the agreement encompasses the judicial branch. Plaintiffs are not parties to the contract. As individuals affected by official action, their only cognizable legal concern is whether the action taken as a result of the agreement is an action authorized by law. They are entitled to complain that the actions are not statutorily authorized, or that the lack of a specific regulation renders application to the judiciary an illegal act. Plaintiffs have standing to voice those concerns and we have ruled on those arguments. We do not think plaintiffs have standing to argue for an interpretation of the agreement to which they are not parties which disagrees with the interpretation given by both parties to the agreement.

■ Second, even if plaintiffs have standing, we disagree with their position as a matter of contractual interpretation. In looking to the substance of contract question, a federal rule of decision is appropriate due to the fact that this contract is entirely a creation of federal statute. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979); *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943); *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). In finding a decisional rule we must choose between relying on general principles of common law, thereby creating a substantive federal rule, or adopt a state rule. *Kimbell*, 440 U.S. at 728, 99 S.Ct. at 1458; *Clearfield*, 318 U.S. at 367, 63 S.Ct. at 575; *see* Friendly, *In Praise of Erie–And of the New Federal Common Law*, 39 N.Y.U.L.Rev. 383, 410 (1964). We opt for the application

of a Puerto Rico rule. Since this federal program is designed to assist the states, and since the states have the power to negotiate individual contracts with the Treasury Department, there is no great federal interest in having the contracts interpreted uniformly. We see this matter to be more like *Kimbell,* in which the court faced the issue of contractual liens from federal programs like the Small Business Administration, and adopted a state rule, rather than situations where a fully uniform federal rule is necessary, such as in the field of military contracts. *Rodríguez v. Vuono,* 757 F.Supp. 141 (D.P.R.1991).

Puerto Rico contract law emphasizes the effectuation of the intent of the contract, eschewing heavily technical interpretative techniques. In Title 31 L.P.R.A. § 3476, the Code states that "[w]ords which may have different meanings shall be understood in that which may be most in accordance with the nature and object of the contract." We think it clear from the full text of the contract that the agreement was meant to embody the full extent of federal/state withholding cooperation as contemplated in the statute, section 5517. The contract's reference to section 215.2 for definitions appears to have been made with the assumption that section 215.2 effectuated a plenary implementation of all the power inherent in section 5517. Since we find that section 215 is not as broad as the statute, we find that the contractual reference to the statute itself trumps the contractual reference to the regulations. This contract provides for all federal withholding that would be authorized by the statute, including judicial branch withholding.[7]

### Administrative Procedure Act

■ Plaintiffs argue that the agreement entered into by the Secretary in this instance amounted to substantive rule-making subject to the formal notice and comment procedures as set out in the Administrative Procedure Act (APA), 5 U.S.C.

§§ 551 *et seq.* We disagree. The APA's notice and comment requirement does not apply to interpretive rules, but only to substantive rules. 5 U.S.C. § 553(b). "If the rule in question merely clarifies or explains existing law or regulations, it will be deemed interpretive." *Bailey v. Sullivan,* 885 F.2d 52, 62 (3rd Cir.1989); *Ohio Department of Human Services v. United States Department of Health and Human Services, Health Care Financing Administration,* 862 F.2d 1228 (6th Cir.1988). The agreement at issue here barely rises to the level of an "interpretation", and it is certainly not substantive rule-making. It is no more than the application, in an individual case, of a power already set out in and defined by statute. We note that none of the forty-one agreements between the Secretary of the Treasury and the States, and none of the sixty-seven agreements between the Secretary and different cities and counties have been executed pursuant to the notice and comment provisions of the APA. (Docket Document No. 17).

### Procedural Due Process

Since we find today that the execution of the agreement at issue here was done in a fully authorized and legal manner, plaintiffs have no due process claim regarding the procedure taken to enter into the agreements. All the process which was due was afforded.

### Back Pay Act Claim

■ We have no jurisdiction to determine the validity of any Back Pay Act claim. The Back Pay Act provides that:

An employee or an agency who, on the basis of a timely appeal or an administrative determination ... is found *by appropriate authority under applicable law,* rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action ... [is entitled to back pay].

5 U.S.C. § 5596(b)(1) (emphasis added).

The Supreme Court has explicitly held that "appropriate authority" which must

---

7. We note that although we have applied a Puerto Rico rule, we would have reached the same result under "general" law principles, had we

determined that a uniform federal rule would be appropriate.

determine whether the personnel action was justified is the agency itself or the federal Merit Systems Protection Board, or the Federal Circuit (when the MSPB or the Federal Circuit are given power to review agency decisions). *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). The *Fausto* Court specifically *denied* that the Court of Claims or any district court operating under the Tucker Act (relied on by plaintiffs here) would have the power to hear the merits of whether the personnel action was unjustified. Only armed with a determination of "unjustified" from the agency, the MSPB, or the Federal Circuit on appeal can a Back Pay Act plaintiff invoke the jurisdiction of the district court or Court of Claims. The *Fausto* Court based its reasoning on the "comprehensive and integrated review scheme of the CSRA" [Civil Service Reform Act of 1978, Publ.L. 95-454, 92 Stat. 1111 *et seq.*, codified, as amended, in various sections of 5 U.S.C. (1982 ed. and Supp. IV) ]. Since plaintiffs appear before us and ask us to find that the withholding was an "unwarranted" personnel action as a predicate to a Back Pay Act award, they are asking us to engage in the very review forbidden by the *Fausto* decision. The holding of *Fausto* has been specifically applied to Postal employees by the First Circuit in *Diaz v. United States Postal Service*, 853 F.2d 5 (1st Cir.1988). The Back Pay Act claims are dismissed.

### *Unequal Application and Withholding Rates*

■ Plaintiffs allege in their amended complaint that different agencies began withholding at different times in Puerto Rico, that some have yet to begin withholding, that some withhold on all federal pay including COLA, and that others do not. Plaintiffs claim that this practice amounts to differential treatment violative of the Due Process clause of the fifth amendment so far as that clause contains an Equal Protection element. Plaintiffs' argument, it seems, is that even assuming that the withholding agreement between Puerto Rico and the Treasury Department is valid, its uneven application violates Equal Pro-

tection. Plaintiffs seek a declaration that "withholding taxes under the agreement [in a discriminatory way] denies [plaintiffs] equal protection under the law." (Docket Document No. 14, *Amended Complaint* ¶ 6.1.2). There is no allegation that any protected class is being burdened, nor that a fundamentally protected interest is at stake. Plaintiffs do not allege that the agencies that are withholding are doing so with any intent or purpose to discriminate against their particular employees. The allegation is simply that implementation and enforcement by the agencies is irregular and non-uniform.

■ This fails to state an Equal Protection violation. Where, as here, the claim is the unequal application of a facially neutral rule, there is no Equal Protection violation unless the burdened party can prove "an element of intentional or purposeful discrimination." *Snowden v. Hughes*, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); *E & T Realty v. Strickland*, 830 F.2d 1107 (11th Cir.1987), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988) ("Unequal administration of facially neutral legislation can result from either misapplication (i.e., departure from or distortion of the law) or selective enforcement (i.e., correct enforcement in only a fraction of cases). In either case, a showing of intentional discrimination is required."). In a sense, failure to apply the withholding procedures to all employees who might fall within its grasp is a form of selective prosecution. Selective prosecution does not rise to the level of a constitutional violation without proof that the officials intended to burden certain individuals while letting others off. "Absent any allegation of a discriminatory purpose, a mere failure of those who administer the law to treat equally all persons who violate the law does not constitute a denial of the constitutional right to equal protection." *Harrington v. United States*, 673 F.2d 7, 9 (1st Cir.1982); *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962).

Plaintiffs' reliance on *Allegheny Pittsburgh Coal Co. v. County Commission of Webster County, West Virginia*, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989), is misplaced. In *Allegheny* the Court faced a challenge to a county property tax scheme. The law assessed taxes based on the actual price of the property when sold. This resulted in very high tax liabilities for properties recently sold, and very low assessments for properties held by the same owner for many years. The plan did periodically adjust upwardly the assessments of land which did not change hands, but at such a pedestrian pace that the court found that it would take five-hundred years for a non-transferred property to reach the same assessment value as a property sold at current market values. New purchasers found themselves paying up to thirty times more in property tax than neighbors holding similar property which had not recently sold. The Court found that disparity resulted in a violation of the Equal Protection clause.

*Allegheny* is distinguishable from the case at hand. In *Allegheny*, the attack was on the very classification system set up in the tax plan itself, not merely unequal enforcement. The plan itself, by its very nature, proscribed wildly different taxation for persons similarly situated. The Court relied on the fact that the statute in *Allegheny* was precisely designed to undervalue the property of long-time owners and overvalue the property of new purchasers. The Court's ruling, in essence, was that the discrimination caused by the classifications set up in the statute against new purchasers was not rationally related to a legitimate governmental interest.

▆▆ Cases of unequal administration of valid statutes, as in the case at bar, are treated differently than attacks on the validity of the statute itself. *E & T Realty v. Strickland*, 830 F.2d at 1112, n. 5. In an attack on the validity of the statute itself, the element of "intentionality" is assumed, since the statute was written precisely in order to effect the disparate treatment of which the suing party complains. The drafters of a particular law or regulation, by definition, "intend" to discriminate between the various classifications in the law or rule. The court in those cases need only decide whether the classification is rationally related to legitimate governmental ends since the intent element is plain on the face of the law or rule.

With unequal administration, however, the plaintiff has a burden to plead and prove the intentional discrimination against him or her. Plaintiffs have not pleaded, nor suggested that evidence exists to prove, that they are being singled out by officials for differential treatment (except so far as they are federal employees subject to withholding).

We find, therefore, that the plaintiffs here enduring withholding have no viable Equal Protection claim. If withholding is legal, as we have held, *supra,* the fact that some agencies are not in compliance creates no rights in the employees of those agencies who are in compliance, without some suggestion that the employees in the withholding agencies are being personally targeted for reasons not bearing on their status as federal employees subject to withholding.[8]

### Conclusion

Plaintiffs are entitled to no relief. A judgment will be entered to the following effect:

1. Civil Numbers 89–0412, 90–1117, and 90–1173 are consolidated.

2. All claims against the Commonwealth of Puerto Rico are dismissed for lack of subject matter jurisdiction.

3. All Back Pay Act claims are dismissed for lack of subject matter jurisdiction.

4. Summary judgment is granted to defendants on all remaining causes of action

---

8. We take no position on whether an employee who wished to have pay withheld, but was employed at a non-withholding agency could force the agency to begin compliance. If such a claim could be sustained, however, it would be on a statutory or regulatory basis, not constitutional.

and is denied plaintiffs on all remaining causes of action.

IT IS SO ORDERED.