MYRNA RODRÍGUEZ, JUAN E. LUGO y OTROS, demandantes y peticionarios, *v.* SECRETARIO DE HACIENDA y OTROS, demandados y recurridos.

*Número:* CE-93-14          *Resuelto:* 1ro de marzo de 1994

*Eddie Ramírez Vale*, abogado de los demandantes y peticionarios; *Carlos Lugo Fiol, Procurador General Interino, Reina Colón de Rodríguez, Subprocuradora General Interina*, y *Sylvia Cancio Bigas, Procuradora General Auxiliar*, abogados de los demandados y recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

¿Puede el Estado Libre Asociado de Puerto Rico imponer, con validez, contribuciones sobre ingresos al pago que reciben los empleados federales en el servicio civil en concepto de la *cuota de ajuste por costo de vida (cost of living allowance*, en adelante *COLA*)?

# I

Myrna Rodríguez recibe el referido pago *adicional* y el Departamento de Hacienda (en adelante Hacienda) le cobra contribuciones. Para facilitar su cobro, Hacienda mantiene un acuerdo de retención con el Tesoro federal.[1]

En 1987, ella —en unión a otros empleados— acudió al foro federal para solicitar el reintegro de tales contribuciones. Esa acción fue desestimada por falta de jurisdicción —*Parker v. Agosto Alicea*, Caso Civil Núm. 87-0386 (D.P.R.)— el dictamen fue confirmado por la Corte de Apelaciones para el Primer Circuito en *Parker v. Agosto-Alicea*, 878 F.2d 557 (1er Cir. 1989).

Así las cosas, el 9 de junio de 1989 Rodríguez y algunos compañeros en igual situación cuestionaron en el Tribunal Superior, Sala de San Juan, la legalidad de esas contribuciones y solicitaron su reintegro. El Estado se opuso. Luego de varios incidentes procesales, ambas partes solicitaron la sentencia sumaria.[2]

El 17 de diciembre de 1992, dicho foro (Hon. Gilberto Gierbolini, Juez) dictó una sentencia sumaria a favor del Estado. Fundamentó su análisis en nuestra Ley de Contribuciones sobre Ingresos y en la conclusión de que el Congreso federal *no* había dado inmunidad a la compensación por concepto de *COLA* de contribuciones estatales o territoriales. Respecto al reclamo de trato contributivo diferente o desigual, concluyó que la *cuota de subsistencia (subsistance allowance)* o *cuota de alojamiento (quarter*

---

[1] *Romero v. Brady*, 764 F. Supp. 227 (D.P.R. 1991).

[2] Con vista a ese trámite, el tribunal delimitó así las controversias:

"(a) [s]i el 'COLA' es tributable en Puerto Rico

"(b) [s]i el Gobierno de los Estados Unidos de Norteamérica consintió a que el Gobierno de Puerto Rico impusiera contribuciones sobre el 'COLA' [y]

"(c) [d]e resolverse las anteriores en la afirmativa debe también resolverse si existe un alegado discrimen a favor de otro grupo que impida la imposición de las contribuciones a los demandantes (empleados federales en el servicio civil)." Caso Núm. CE-93-14, Parte II, Apéndice, pág. 5.

*allowance*) que reciben los *miembros de la Guardia Nacional* es distinta y, además, el *COLA* de los militares es *igualmente tributable.*

A solicitud de los demandantes Rodríguez *et al.*, revisamos.([3])

## II.

■■ Concentrémonos primero en el señalamiento de naturaleza *procesal*. Una sentencia sumaria procede si

... las alegaciones ... [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren *que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia .sumaria a favor de la parte promovente.* (Énfasis suplido.) Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Reiteramos su utilidad y propósito de garantizar una solución justa, rápida y económica. Véanse: *Toledo Maldonado v. Cartagena Ortiz*, 132 D.P.R. 249 (1992); *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 D.P.R. 115 (1992); *Méndez Arocho v. El Vocero de P.R.*, 130 D.P.R. 867 (1992);

---

([3]) Aunque este caso ha sido denominado como *certiorari*, lo hemos acogido como revisión.

En su apoyo, se discuten los señalamientos siguientes:

"A. ... Resolver por sentencia sumaria que no existe una controversia genuina de hechos sobre el aspecto del discrimen.

"B. ... Determinar que la tributación del COLA no genera discrimen y al no determinar que viola la cláusula de uniformidad de la Constitución del E.L.A.

"C. ... No garantizarle un juicio de novo o demanda civil a los peticionarios con todas las garantías procesales que provee el procedimiento para solicitar reintegro bajo la Ley de Contribución sobre Ingresos de Puerto Rico, 13 L.P.R.A. [sec.] 3323(A).

"D. ... Dictar sentencia sumaria sin haberse terminado con el procedimiento de descubrimiento de prueba escrito y al obligar a los peticionarios a radicar en diez días una contestación a la sentencia sumaria enmendada sin permitirles tener el beneficio del descubrimiento de prueba relacionado con los .interrogatorios, la producción de documentos y los requerimientos de admisiones.

"E. ... Determinar que el COLA es compensación o pago o ingreso para los empleados federales.

"F. ... Concluir que la cláusula de supremacía no prohíbe la tributación del COLA en Puerto Rico a los empleados federales." Petición de *certiorari*, págs. 4–5.

*Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714 (1986).

La sentencia de autos responde a esa visión. Los documentos ante nos reflejan que los recurrentes Rodríguez *et al. no* demostraron la existencia de *hechos materiales* en controversia. La vista celebrada el 23 de octubre de 1992, para aclarar las controversias alegadas que impedían su adjudicación sumaria, reveló —en virtud de una deposición de William Stuart Collazo, ex funcionario de Hacienda— que el COLA de los militares *también tributa* y que es una *partida adicional y distinta* a la de las cuotas de alojamiento y subsistencia. Surgió, además, que las referidas cuotas de subsistencia y alojamiento de los militares son estipendios diferentes al COLA que reciben los demás empleados federales y los propios militares. Como ilustran sus nombres, la cuota de alojamiento es específicamente para vivienda y la de subsistencia para el sustento del militar. 37 U.S.C. secs. 402–403.([4])

---

([4]) La Orden Ejecutiva Núm. 11157 de 22 de junio de 1964 (29 Fed. Reg. 7973) según enmendada por otras órdenes, hasta la Núm. 12762 de 4 de junio de 1991 (56 Fed. Reg. 25993) 37 U.S.C. sec. 301 (Sup. 1993), es ilustrativa de estos estipendios.

Respecto a las cuotas básicas de subsistencia (*basic allowances for subsistance*) expone:

"Sec. 301. A los miembros de las Fuerzas Armadas a quienes le son otorgados subsistencia en género para uso de la cafetería, cuyos deberes requieren su ausencia de la base durante uno o más período de comida, tendrán derecho a recibir por dichas comidas una prorrata de la cuota diaria de subsistencia, autorizada a miembros activos en bases donde raciones en género no están disponibles." (Traducción nuestra.)

Y en 37 U.S.C. sec. 402 se explica lo siguiente:

"(b) Un alistado tiene derecho a la cuota básica de subsistencia diariamente en las siguientes situaciones-

"(1) cuando raciones en género no están disponibles;

"(2) cuando el permiso de usó de cafetería se otorga por separado; y

"(3) cuando es asignado a servicio en situaciones de emergencia en las cuales recursos de cafetería de los Estados Unidos no están disponibles." (Traducción nuestra.)

Sobre la cuota básica de alojamiento (*basic allowances for quarters*) dispone:

"(b) Salvo donde provisto lo contrario por la ley, un miembro de las Fuerzas Armadas que tiene asignado alojamiento de los Estados Unidos o facilidades de alojamiento bajo la jurisdicción de una de las ramas de las Fuerzas Armadas, cónsono con su grado, rango, escala salarial, y que sea adecuado para él y sus dependientes, si alguno, no tiene derecho a la cuota básica de alojamiento. No obstante, sujeto a las provisiones de la subsección (j), un miembro sin dependientes ... podrá

Por su parte, los recurrentes Rodríguez *et al.* reciben una cuota de ajuste por el costo de vida *(cost of living allowance)* de acuerdo con 5 U.S.C. sec. 5941, que dispone:

> (a) Asignaciones o fondos disponibles para una agencia del Ejecutivo, salvo una corporación bajo control gubernamental para los salarios de empleados en servicio fuera de la jurisdicción continental de los Estados Unidos, o en Alaska, cuyas escalas de salario básico son provistas por ley, están disponibles para pagar las cuotas a estos empleados. La cuota está basada en-
> (1) costos de vida sustancialmente mayores que en el Distrito de Columbia;
> (2) las condiciones de vida donde los factores ambientales son sustancialmente diferentes a las condiciones de vida ambientales en los Estados Unidos continentales y ameritan una cuota como incentivo para el reclutamiento; o
> (3) ambos factores.
> La cuota no puede exceder.el 25 por ciento de la escala salarial básica. (Traducción nuestra.)

■ Es claro que el COLA constituye un pago o *compensación adicional al salario básico* que reciben los empleados federales en el servicio civil. Los recurrentes Rodríguez *et al.* no reciben cuotas por alojamiento o subsistencia. No hay trato preferencial alguno; se trata de partidas y conceptos diferentes que no configuran trato discriminatorio alguno.

*No* erró, pues, el tribunal de instancia al usar la vía sumaria. Aunque los recurrentes Rodríguez *et al.* lo alegaron, no probaron la existencia de una práctica discriminatoria o de trato preferencial con relación a personas *situadas de forma similar.* Sabido es que un trato contributivo diferente —de estipendios de naturaleza diferente— no constituye per se un trato preferencial ni discriminatorio.

---

escoger no utilizar dicho alojamiento y en cambio recibir la cuota básica de alojamiento prescrito en esta sección para su escala salarial ...". (Traducción nuestra.) 37 U.S.C. sec. 403.

# III

En lo *sustantivo*, no erró el tribunal de instancia al concluir que el COLA es un pago o ingreso y que no existe prohibición que impida su tributación en Puerto Rico.

Según expuesto, la concesión del COLA a los empleados federales en el servicio civil está fundamentada en que aquí el costo de vida es sustancialmente mayor al del Distrito de Columbia y/o como incentivo de reclutamiento por las diferencias sustanciales de las condiciones del ambiente respecto al continente norteamericano. 5 U.S.C. sec. 5941(a)(1) y (2). Conforme a la definición de *ingreso bruto* del Código de Rentas Internas federal, el COLA *no es* tributable. 26 U.S.C. sec. 912.([5]) Para propósitos de la contribución federal sobre ingresos, de los dos (2) tipos de estipendios o diferenciales pagados por el Gobierno federal a sus empleados civiles localizados fuera del continente sólo uno (1) es tributable. El COLA que reciben los recurrentes Rodríguez *et al. no* es un ingreso, pues está excluido de la Sec. 912(1) del Código de Rentas Internas federal de 1954 (*Internal Revenue Code* de 1954). Revenue Rulings 59-407, pág. 745. Y curiosamente, la contribución estatal impuesta al COLA se utiliza como un ejemplo clásico de una deducción no permitida para fines de la contri-

---

([5]) Dispone:
"Los siguientes renglones no serán incluidos dentro del ingreso bruto y estarán exentos del pago de contribuciones bajo este subtítulo:

. . . . .

"(2) Cuota de ajuste por costo de vidaEn el caso de funcionarios o empleados civiles del Gobierno de los Estados Unidos en servicio fuera de la jurisdicción continental de los Estados Unidos (salvo Alaska), las sumas (salvo las sumas recibidas bajo el Título II de la Ley sobre Diferenciales y Cuotas) recibidas como cuotas de ajuste por costo de vida, de acuerdo con la reglamentación aprobada por el Presidente (o en el caso de funcionarios y empleados de la judicatura de los Estados Unidos, de acuerdo a la reglamentación análoga)." (Traducción nuestra.) 26 U.S.C. sec. 972.

Refiérase, además, a 26 U.S.C. sec. 265, en el cual se dispone lo referente a no permitir deducciones sobre ingresos que no son tributables.

bución federal. *Mertens' Law of Federal Income Tax* Sec. 27.10, pág. 28.(⁶)

█ El estatuto que concede el COLA a los empleados federales guarda silencio sobre la tributación estatal o territorial.(⁷) En contraste, la *Ley Pública de Contribución sobre Salario de 1939 —Public Salary Tax Act de 1939 (4 U.S.C. sec. 111)—* autorizó así a los estados a tributar la cuota devengada por los empleados federales:

> Los Estados Unidos *permiten* la imposición de contribuciones sobre ingresos o compensación por servicios personales prestados por un funcionario o empleado de los Estados Unidos, sus territorios o posesiones, o subdivisiones políticas, el gobierno del Distrito de Columbia, o una agencia o dependencia de los anteriores, por una autoridad impositiva debidamente constituida y con jurisdicción, si dichas contribuciones no discriminan contra un funcionario o empleado en virtud de la fuente de ingreso o compensación. (Traducción nuestra.)

En *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803 (1989), el Tribunal Supremo analizó la ley citada y resolvió que el criterio rector era en cuanto a que no se discriminase por motivo de la fuente de ingreso. Invalidó un estatuto de Michigan que imponía una contribución a los empleados retirados del Gobierno federal y excluía a los retirados estatales. El más alto foro sentenció:

> Bajo nuestra jurisprudencia, "la imposición de una carga tributaria mayor a personas que tributan bajo un régimen impositivo en comparación con otros bajo un diferente régimen tributario, debe ser justificada por diferencias entre las dos clases tributarias." *Phillips Chemical Co.* v. *Dumas Independent School Dist.*, 361 U.S. [376], 383 [(1960)]. No debemos depender

---

(⁶) *Mertens Law of Federal Income Tax*, cita *Lapin v. U.S.*, 655 F. Supp. 1344 (D. Hawaii 1987), donde se denegaron las deducciones solicitadas por un empleado federal residente en Hawaii por la contribución estatal que pagaba sobre su COLA. Revenue Ruling 74-140, 1974-1 CB50, según citado en *Mertens*, supra, Sec. 27.94, pág. 231.

(⁷) Se ha resuelto, sin embargo, que la exención contributiva federal del COLA o su exclusión como ingreso bruto bajo la ley federal no afecta la definición de *ingreso* utilizada en el acuerdo de retención del Secretario de Hacienda con el Departamento del Tesoro Federal. *Romero v. Brady*, supra, esc. 1.

solamente del análisis de los casos decididos por esta Corte bajo la cláusula de igual protección de las leyes para determinar si las clasificaciones satisfacen los criterios de justificación. Hemos resuelto que nuestras decisiones bajo el palio de la cláusula de igual protección de las leyes, no sientan precedentes en casos en los cuales están envueltos asuntos relacionados con la inmunidad tributaria intergubernamental ya que el interés del Gobierno debe ser *sopesado*. Id., pág. 305, Sección 474. Al contrario, el asunto estriba en determinar si la inconsistencia en el tratamiento tributario responde a, y está justificado por, distinciones significativas de clase. Id., págs. 383–385, 4 L.Ed.2d 384, 80 S. Ct. 474. (Traducción nuestra.) *Davis v. Michigan Dept. of Treasury*, supra, págs. 815–816.

Subsiguientemente, *Barker v. Kansas*, 503 U.S. 594 (1992), reiteró que la doctrina de inmunidad contributiva intergubernamental se extiende hoy a la prohibición contra la tributación *discriminatoria* contenida en la referida Sec. 111.

■ Nuestra Ley de Contribuciones sobre Ingresos de 1954 (13 L.P.R.A. sec. 3001 *et seq*.), según enmendada, visualiza al ingreso bruto como que abarca cualquier tipo de remuneración. Incluye

... ganancias, beneficios e ingresos derivados de sueldos, jornales o compensación por servicios personales (incluyendo la retribución recibida por servicios prestados como funcionario o empleado del Estado Libre Asociado de Puerto Rico, de cualquier estado de la Unión, de los Estados Unidos, o de cualquier subdivisión política de los mismos, o de cualquier agencia o instrumentalidad de cualesquiera de las mencionadas entidades) de cualquier clase y cualquiera que sea la forma en que se pagaren; o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso del interés en tal propiedad; también los derivados de intereses, rentas, dividendos, beneficios de sociedades, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad; y ganancias o beneficios e ingresos derivados de cualquier procedencia. 13 L.P.R.A. sec. 3022.

■ Por otra parte, en las disposiciones pertinentes, el COLA de los empleados federales no está incluido entre las

exenciones o exclusiones de ingreso bruto dispuestas en nuestra Ley de Contribuciones sobre Ingresos. *Por fíat judicial no podemos hacerlo. Berwind Lines, Inc. v. Srio. de Hacienda,* 113 D.P.R. 658, 660 (1982); *Esso Standard Oil v. A.P.P.R.*, 95 D.P.R. 772, 784 (1968).

■ Nuestra Constitución reconoce el poder del Estado Libre Asociado para imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios, según lo disponga la Asamblea Legislativa. Art. VI, Sec. 2, Const. E.L.A., L.P.R.A., Tomo 1.

A su amparo, hace casi tres (3) décadas, en *R.C.A. v. Gobierno de la Capital,* 91 D.P.R. 416 (1964), dejamos constancia de nuestra renuencia a rendir ese poder fácilmente; sólo lo anularíamos cuando fuera ejercitado contrario a las disposiciones aplicables de la Constitución o "en violación de las obligaciones legales y morales que aceptó el pueblo en sus Relaciones Federales". Íd., pág. 440. Esas circunstancias no están presentes aquí.

Es válida y constitucional la interpretación que el Departamento de Hacienda de Puerto Rico hizo en 1973 en cuanto a que el COLA constituye un ingreso sujeto al pago de contribuciones.

Por los fundamentos expuestos, *se dictará sentencia confirmatoria.*

El Juez Asociado Señor Hernández Denton emitió una opinión concurrente y de conformidad, a la cual se unió la Juez Asociada Señora Naveira de Rodón. El Juez Asociado Señor Rebollo López no intervino.

— O —

Opinión concurrente y de conformidad emitida por el Juez Asociado Señor Hernández Denton, a la cual se une la Juez Asociada Señora Naveira de Rodón.

Recurren ante nos los empleados federales contra la

sentencia del Tribunal Superior que desestimó su demanda de reintegro contra el Secretario de Hacienda. Concurrimos con la opinión del Tribunal al concluir que no erró el tribunal de instancia al utilizar la vía sumaria para desestimar la demanda incoada por la parte recurrente y que la cuota de ajuste por el costo de vida es una partida tributable válidamente en Puerto Rico. Por la importancia de las controversias ante nos, consideramos necesario expresarnos por separado.

## I

Los demandantes recurrentes son empleados federales en el servicio civil, quienes reciben un pago adicional, como parte de su compensación por concepto de una cuota de ajuste por el costo de vida (*cost of living allowance*, en adelante COLA). Esta partida es considerada como un ingreso tributable en Puerto Rico y el Departamento de Hacienda cobra la contribución correspondiente mediante un acuerdo de retención con el Departamento del Tesoro federal.

Inconformes con tal contribución, los empleados federales acudieron al foro federal para solicitar el reintegro, pero éste desestimó la reclamación por falta de jurisdicción. Acudieron, entonces, los contribuyentes ante el Tribunal Superior, Sala de San Juan. La parte demandada solicitó la desestimación sumaria de la demanda, a lo cual los empleados federales se opusieron. A su vez, éstos solicitaron sentencia sumaria a su favor.

Celebrada una vista para discutir los planteamientos de las partes, el tribunal de instancia desestimó sumariamente la demanda por considerar que el Congreso no eximió a los beneficiarios del COLA del pago de contribuciones estatales sobre tal partida. No conformes con la determinación anterior, los empleados federales recurren ante nos planteando, en síntesis, que el tribunal de instan-

cia erró: al utilizar el mecanismo de sentencia sumaria; al concluir que el COLA constituye paga o compensación, y al rechazar el argumento de que la cláusula de la supremacía federal impide la imposición de contribuciones sobre el COLA en Puerto Rico. No les asiste la razón. Veamos.

## II

Los empleados federales recurrentes señalan que no procedía la utilización de la vía sumaria por las razones siguientes:

*Primero*, aducen que existía controversia real sobre un hecho esencial: si los miembros de la Guardia Nacional pagan contribuciones en Puerto Rico por las cuotas de subsistencia y alojamiento que reciben. Explican que se trata de un hecho esencial porque, de probarse que los miembros de la Guardia Nacional (considerados empleados estatales) no tributan por tales partidas, existiría un trato discriminatorio contra los empleados federales por razón del origen de su compensación. Señalan que tal discrimen está prohibido por el *Public Salary Tax Act of 1939* (4 U.S.C. sec. 111).[1]

*Segundo*, los empleados federales señalan que el tribunal de instancia desestimó sumariamente la demanda sin permitirles realizar el descubrimiento de prueba, necesario para oponerse adecuadamente a la moción de sentencia sumaria presentada por la parte demandada. Surge del expediente que el descubrimiento de prueba estaba dirigido a sustentar la alegación de que los miembros de la Guardia

---

[1] El *Public Salary Tax Act of 1939* dispone lo siguiente:

"The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States, a territory or possession or political subdivision thereof, the government of the District of Columbia or an agency or instrumentality of one or more of the foregoing, by a duly constituted taxing authority having jurisdiction, *if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.*" (Énfasis suplido.) 4 U.S.C. sec. 111.

Nacional no tributan por las cuotas de subsistencia y alojamiento.

*Tercero*, los recurrentes alegan que la utilización de la vía sumaria les privó de su derecho a un juicio *de novo*, garantizado por la Ley de Contribución sobre Ingresos y por la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico.([2]) Veamos.

El trato discriminatorio alegado no se configuró. Concurrimos con la conclusión del Tribunal en el sentido de que las cuotas de subsistencia y alojamiento que reciben los miembros de la Guardia Nacional son estipendios totalmente diferentes al COLA recibido por los empleados federales. Por ende, la controversia sobre si las primeras son o no tributables en Puerto Rico no era esencial para la decisión del caso y no impedía la utilización del mecanismo de sentencia sumaria. Por la misma razón era innecesario conceder un tiempo adicional para concluir el descubrimiento de prueba solicitado por los empleados federales.

Tampoco se privó a los recurrentes de su derecho a un juicio *de novo*. Este derecho implica que el tribunal de instancia no tiene que limitarse a resolver si las conclusiones del Departamento de Hacienda están o no sostenidas por evidencia sustancial, pudiendo revisar tanto cuestiones de hecho como de derecho. *Granados v. Rodríguez Estrada I*, 124 D.P.R. 1 (1989); *Vélez Quiñones v. Srio. de Instrucción*, 86 D.P.R. 755 (1962). Al igual que en un juicio ordinario, el

---

([2]) La Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico dispone lo siguiente:

"Las disposiciones de este subcapítulo [sobre revisión judicial] serán aplicables a aquellas órdenes, resoluciones y providencias dictadas por agencias o funcionarios administrativos que deban o puedan ser revisadas por el Tribunal Superior de Puerto Rico, excepto las dictadas por el Secretario de Hacienda con relación a las leyes de rentas internas del Estado Libre Asociado de Puerto Rico, las cuales se revisarán mediante la presentación de una demanda y la celebración de un juicio *de novo*. Todo demandante que impugne la determinación de cualquier deficiencia realizada por el Secretario de Hacienda vendrá obligado a pagar la porción de la contribución no impugnada y a prestar fianza por la totalidad del balance impago de la contribución determinada por el Secretario de Hacienda, en o antes de la presentación de la demanda." 3 L.P.R.A. sec. 2171. Véase, también, la Ley de Contribución sobre Ingresos de 1954 (13 L.P.R.A. sec. 3323(a)).

tribunal tiene toda la evidencia ante sí, además de alegatos y memorandos de derecho, y resuelve el caso mediante evaluación independiente. En el juicio *de novo*, como en cualquier otro, aplican las Reglas de Procedimiento Civil, entre ellas, las referentes a las mociones de sentencia sumaria. Nada impide que se decida de manera sumaria un caso como el presente si ello procede de acuerdo con tales reglas.

Por todo lo anterior, no se cometieron los primeros cuatro (4) errores planteados. Por lo tanto, procede que evaluemos los dos (2) últimos errores, que plantean las controversias siguientes: ¿Constituye el COLA una paga o compensación de forma que los estados estén autorizados, al amparo del *Public Salary Tax Act of 1939*, a imponer contribuciones sobre esa cuota? ¿Constituye una violación a la Cláusula de la Supremacía federal el hecho de que el Departamento de Hacienda de Puerto Rico imponga contribuciones sobre el COLA, a pesar de que el Congreso eximió de tributación federal tal partida? Veamos.

### III

Los recurrentes alegan que el Congreso no autorizó la imposición de impuestos estatales sobre el COLA. En síntesis, aducen que el COLA no constituye una paga o compensación, de acuerdo con el significado del *Public Salary Tax Act of 1939* (4 U.S.C. sec. 111), por el cual el Congreso autorizó a los estados a imponer un tributo sobre el salario de los empleados federales.[3] Señalan, además, que el Gobierno federal definió COLA como una partida no compensatoria y que tal definición debe prevalecer por provenir de la entidad que autorizó la imposición del tributo sobre el salario de sus empleados.

---

[3] Antes de la aprobación del *Public Salary Tax Act* había predominado, durante más de (100) cien años, la doctrina de inmunidades contributivas intergubernamentales, la cual protegía al Gobierno federal contra contribuciones estatales y viceversa. Esta protección se extendía a los salarios de los empleados federales.

Por su parte, el Procurador General alega que el COLA es considerado en la jurisdicción federal como una compensación adicional, por lo tanto tributable bajo 4 U.S.C. sec. 111. Añade que el COLA está exento de tributación federal únicamente, lo cual no se extiende a la tributación estatal. Concluye que en Puerto Rico el COLA es un ingreso tributable de acuerdo con la Sec. 22(a) de nuestra Ley de Contribuciones sobre Ingresos, 13 L.P.R.A. sec. 3022(a).

La solución de esta controversia requiere un análisis de los orígenes del COLA. Esta cuota surgió en virtud del *Independent Offices Appropriations Act* de 20 de abril de 1948, el cual disponía que se pagaría, de acuerdo con órdenes del Presidente, un salario o compensación a los empleados que trabajaban fuera de Estados Unidos continentales o en Alaska hasta un máximo del 25 por ciento del salario básico.

> ... Except as otherwise provided by law, any appropriations or funds available to the executive departments, independent establishments, and corporations for the payment of *salaries* and *compensation* to persons employed outside the continental United States or in Alaska shall be available for the payment of such *salaries* and *compensation* only in accordance with regulations prescribed by the President at rates of pay equal to those paid for the same or similar services of persons employed by the Government in continental United States, plus not to exceed 25 per centum: Provided, that no such *salary* or *compensation* shall exceed the maximum provided by the Classification Act of 1923, as amended. (Énfasis suplido.) 20 de abril de 1948, Cap. 219, Sec. 207 (62 Stat. 194).

La anterior disposición fue enmendada con prontitud por el *Supplemental Independent Offices Appropriation Act* de 30 de junio de 1948, el cual aclaró que esta compensación adicional se pagaría por las diferencias en el costo de vida o por condiciones ambientales que hicieran necesario un incentivo para el reclutamiento de personal.

> Sec. 104. Section 207 of the Independent Offices Appropriation Act, 1949, is hereby amended to read as follows:

Sec. 207. Any appropriations or funds available to the executive departments, independent establishments, and wholly owned Government corporations for the payment of salaries and compensation to persons stationed outside the continental United States or in Alaska whose rates of basic compensation are fixed by statute, shall be available for the payment of *additional compensation* to such persons, based on living costs substantially higher than in the District of Columbia, or conditions of environment which differ substantially from conditions of environment in the States and warrant additional compensation as a recruitment incentive, or both such factors: Provided, That such *additional compensation*, except as otherwise specifically authorized by law, shall be paid only in accordance with regulations prescribed by the President establishing rates of *such additional compensation* and defining the area, groups of positions, and classes of persons to which each such rate applies: Provided further, That no *additional compensation* based on living costs substantially higher than in the District of Columbia shall be paid under this section to any person who is entitled to receive a cost-of-living allowance under section 901(2) of the Foreign Service Act of 1946 or section 204 of this Act: Provided further, That such *additional compensation* shall not exceed in any instance 25 per centum of the rate of basic compensation: Provided further, That this section shall be effective sixty days after the date of approval of this Act, or on such earlier date as may be specified in regulations issued by the President hereunder, and additional compensation payable under regulations and procedures in effect on the date of approval of this Act may continue to be paid until de effective date of this section. (Énfasis suplido.) 30 de junio de 1948, Cap. 775, Sec. 104 (62 Stat. 1205).

De la simple lectura del texto de ambas disposiciones se desprende claramente que la posición original del Congreso era considerar al COLA como una compensación adicional por los servicios rendidos. Esta partida, por ende, estaba sujeta a la tributación federal.

En 1966 se enmendó nuevamente la ley citada anteriormente para sustituir la expresión "compensación adicional" por "subvención" (*allowance*), por considerarse este último un término más firme y preciso.[4] Sin embargo, esta

---

[4] La disposición en su versión actual establece:

enmienda no cambió la naturaleza compensatoria del COLA, según se desprende de sus interpretaciones posteriores, hechas por la Rama Ejecutiva y por la jurisprudencia federal. Veamos.

Cumpliendo un deber impuesto por el *Independent Offices Appropriations Act*, según enmendado, el Presidente de Estados Unidos reglamentó por primera vez el pago del COLA mediante la Orden Ejecutiva Núm. 10,000 de 16 de septiembre de 1948 (13 Fed. Reg. 5453–5454. Esta orden se refiere al COLA como una compensación adicional, según se desprende de lo siguiente:

Part I–ADDITIONAL COMPENSATION IN FOREIGN AREAS

Sec. 109. Additional living cost compensation. No executive department, independent establishment, or wholly owned Government corporation shall pay, pursuant to section 207 of the Act, *additional compensation* to any employee located in any foreign area by reason of living costs which are substantially higher than those in the District of Columbia: Provided, That this section shall not be construed to prevent any payment under section 204 of said Independent Offices Appropriation Act, 1949, or under other appropriate authority.

Part II—ADDITIONAL COMPENSATION IN TERRITORIES

"(a) Appropriations or funds available to an Executive agency, except a Government controlled corporation, for pay of employees stationed outside the continental United States or in Alaska whose rates of basic pay are fixed by statute, are available for *allowances* to these employees. The *allowance* is based on-

"(1) living costs substantially higher than in the District of Columbia;

"(2) conditions of environment which differ substantially from conditions of. environment in the continental United States and warrant an allowance as a recruitment incentive; or

"(3) both of these factors.

"The *allowance* may not exceed 25 percent of the rate of basic pay. Except as otherwise specifically authorized by statute, the *allowance* is paid only in accordance with regulations prescribed by the President establishing the rates and defining the area, groups of positions, and classes of employees to which each rate applies.

"(b) An employee entitled to a cost-of-living allowance under section 5924 of this title may not be paid an allowance under subsection (a) of this section based on living costs substantially higher than in the District of Columbia." (Énfasis suplido.) 5 U.S.C. sec. 5941.

Sec. 205. Additional living cost compensation. (a) The United States Civil Service Commission shall from time to time, subject to applicable law, (1) designate places in the Territories where it determines that living costs are substantially higher than in the District of Columbia, (2) fix for each place so designated an additional rate or rates of *compensation* to be paid by reason of such higher living costs pursuant to section 207 of the Act, and (c) prescribe such further regulations, governing such compensation, as may be necessary. *Additional compensation* so fixed is hereafter in this Part referred to as "Territorial cost-of-living allowance.(⁵)

Varias órdenes ejecutivas le han seguido, enmendándola pero reiterando el lenguaje utilizado.(⁶) De hecho, las secciones arriba citadas como ejemplo de la utilización de la frase "compensación adicional" al referirse al COLA permanecen inalteradas en ese sentido. De haber sido la intención congresional y ejecutiva considerar al COLA como una partida no compensatoria, las órdenes ejecutivas posteriores a la enmienda de 1966 hubieran transformado de forma correspondiente su lenguaje.

Además, si se hubiese considerado al COLA como una partida no compensatoria, no constitutiva de ingreso tributable, no hubiera sido necesario incluir una disposición en el Código de Rentas Internas eximiéndola expresamente de tributación federal.(⁷) Los recurrentes aducen que el

---

(⁵) La Orden Ejecutiva Núm. 10,000 reglamentó: (1) el pago de la compensación adicional a empleados federales que trabajaban fuera de Estados Unidos continentales o en Alaska, discutido en las primeras tres (3) partes de la orden; (2) el pago de diferenciales sobre el salario de oficiales y empleados en el "Foreign service", basado en la Sec. 443 del *Independent Offices Appropriation Act,* y recogido en la cuarta parte de la orden; (3) pago de diferenciales por trabajar en bases extranjeras bajo condiciones poco saludables (*unhealthful foreign posts*), por la Sec. 853 del mismo estatuto, en la parte cinco (5) de la orden. El pago de compensación adicional basado en la Sec. 207 del *Independent Offices Appropriations Act* se discute por separado dependiendo de si se concede en el extranjero o en territorios de Estados Unidos.

(⁶) Las siguientes Ordenes Ejecutivas enmendaron la Núm. 10,000: Ex. Ord. No. 10636, Sept. 16, 1955 (20 Fed. Reg. 7025); Ex. Ord. No. 11938, Sept. 29, 1976 (41 Fed. Reg. 43383); Ex. Ord. No. 12107, Dec. 28, 1978 (44 Fed. Reg. 1055); Ex. Ord. No. 12510, Apr. 17, 1985 (50 Fed. Reg. 15535).

(⁷) En 1943 se añadió una nueva subsección a la Sec. 116 del Código de Rentas Internas federal, para excluir del ingreso bruto las siguientes partidas: (1) COLA recibido por empleados federales en el extranjero; (2) diferenciales recibidos por embajadores, ministros y cónsules, y (3) COLA recibidos por empleados civiles del Go-

COLA es no compensatorio, fundamentándose en la Determinación Administrativa (*Revenue Ruling*) 59-407 del Servicio de Rentas Internas federal, que expresó: "Such allowances are noncompensatory in character." Sin embargo, esta expresión no produce el efecto deseado por los contribuyentes recurrentes. La determinación administrativa mencionada aclaró únicamente el *status* contributivo *federal* del COLA, y al explicar que era no compensatoria, se refirió al Senate Report 627. Este informe explicó las razones congresionales para eximir al COLA de una contribución federal y estableció que tal exención obedecía a un interés público de eximir esta remuneración adicional de las leyes sobre contribuciones de ingresos, no a las características inherentes de tal partida.

En *Lapin v. United States*, 617 F. Supp. 167 (D. D.C. 1985), se rechazó el argumento de que el COLA no constituye ingreso por ser no compensatorio. El tribunal expresó lo siguiente:

> Plaintiff contends, however, that the COLA is not income within the meaning of Section 265(1) because it is noncompensatory in character. Plaintiff relies principally on a Senate report concerning the exemption from federal income tax of certain COLAs granted to federal employees. *There is nothing in the report, however, that even suggests that COLAs are not considered income. Under the Internal Revenue Code, gross income means all income from whatever source derived, unless excluded by law.* Treas. Reg. 1.61. The COLA at issue in this case is a class of income excluded by I.R.C. Section 912 from gross income. (Énfasis suplido y escolio omitido.) *Lapin v. United States*, supra, pág. 169.[8]

---

bierno federal que trabajen fuera de Estados Unidos continentales, en virtud de reglamentación del Presidente. Mediante la Determinación Administrativa 237 (Rev. Rul.237), C.B.1953-2, 52, se decidió que la exención recogida en la Sec. 116(j) aplicaba al COLA recibido en virtud del *Independent Offices Appropriations Act of 1939*, Sec. 207. Posteriormente, en 1954, se reorganizó y reenumeró la Sec. 116, quedando como existe actualmente la Sec. 912.

[8] En *Lapin v. United States*, 617 F. Supp. 167 (D. D.C. 1985), el empleado federal residente en Hawaii pagó impuestos estatales sobre el COLA y tomó la correspondiente deducción en su planilla federal, por tratarse de un impuesto estatal pagado. Sin embargo, tal deducción le fue denegada por provenir de un ingreso exento bajo el Código de Rentas Internas federal. Es importante destacar, sin em-

Además, la jurisprudencia norteamericana describe al COLA como "a federal program *supplementing* basic pay of employees living in designated non-foreign areas ...". (Énfasis suplido.) *Alaniz v. Office of Personnel Management*, 545 F. Supp. 1182, 1183 (D. Alaska 1982) Véase *Curlott v. Campbell*, 598 F.2d 1175 (9no Cir. 1979). (⁹) Esto ratifica su naturaleza compensatoria.

Por otro lado, en *Romero v. Brady*, 764 F. Supp. 227 (D. P.R. 1991), un grupo de empleados federales que trabajaban en Puerto Rico cuestionó la validez de un acuerdo de retención entre el Estado Libre Asociado de Puerto Rico y el Departamento del Tesoro Federal, por el cual el Gobierno federal retiene las contribuciones sobre los salarios de los empleados federales, incluso la partida del COLA.(¹⁰) Entre otros argumentos, los empleados federales plantearon que el COLA no constituía salario o compensación, por

---

bargo, que este caso no consideró el argumento de falta de autoridad por parte de Hawaii para imponer un tributo sobre el COLA. Veamos lo expresado por el tribunal:

"In his 'supplemental motion for summary judgment', plaintiff also claims that the State of Hawaii unlawfully taxed the COLA which is exempt from federal income tax. He seeks for all federal employees affected a refund of income taxed paid to the State of Hawaii on the COLA. *The State of Hawaii is not a party to this action. Accordingly, plaintiff's claim is not properly before the Court."* (Énfasis suplido.) *Lapin v. United States*, supra, pág. 170 esc. 4.

(⁹) De acuerdo con el *Federal Personnel Manual*, Secs. 591–541(d)(1)(1969), el COLA no se incluye como salario básico al computar pagos de tiempo extra, diferenciales nocturnos, vacaciones, deducciones por retiro u otros pagos adicionales. *Burns v. United States Postal Service*, 380 F. Supp. 623 (D. N.Y. 1974). Sin embargo, sí se considera parte del salario básico para determinar el nuevo salario de empleados de cuello azul que pasan a ser empleados de cuello blanco del Gobierno federal. *Sam v. United States*, 682 F.2d 925 (Ap. Cir. 1982).

(¹⁰) Este acuerdo se produjo en virtud de la siguiente disposición: "(a) When a State Statute–(1) provides for the collection of a tax either by imposing on employers generally the duty of withholding sums from the pay of employees and making returns of the sums to the State, ... and (2) imposes the duty or grants the authority to withhold generally with respect to the pay of employees who are residents of the State; the Secretary of the Treasury, under regulations prescribed by the President, shall enter into an agreement with the State within 120 days of a request for agreement from the proper State official. The agreement shall provide that the head of each agency of the United States shall comply with the requirements of the State withholding statute in the case of employees of the agency who are subject to the tax and whose regular place of Federal employment is within the State with which the agreement is made ...." 5 U.S.C. sec. 5517.

lo que no correspondía la retención contributiva sobre esa partida.[11]

El tribunal no estuvo de acuerdo con tal interpretación, al señalar que la decisión no dependía de la tributabilidad federal del COLA, sino de su tributabilidad en el Estado Libre Asociado de Puerto Rico. "The definition of 'wages' in section 3401(a), which includes 'all *remuneration*', is broad enough to encompass COLA." (Énfasis suplido.) *Romero v. Brady*, supra, pág. 234. Si el COLA fuese de carácter no compensatorio para otros propósitos, se hubiera excluido esta partida del acuerdo de retención entre el Departamento del Tesoro Federal y el Estado Libre Asociado de Puerto Rico. Vemos que el Tribunal de Distrito Federal para el Distrito de Puerto Rico expresamente rechazó tal posibilidad.

Por todo lo anterior, concluimos que el COLA constituye una paga o compensación. Por ende, al amparo del *Public Salary Tax Act*, los estados y el Estado Libre Asociado de Puerto Rico están autorizados a cobrar una contribución sobre tal partida. Ahora bien, ¿Es el COLA una partida tributable de acuerdo con nuestro esquema tributario?

## IV

En Puerto Rico la definición de "ingreso bruto" incluye:

...ganancias, beneficios e ingresos derivados de sueldos, jornales o compensación por servicios personales (incluyendo la re-

---

[11] El tribunal resumió el planteamiento de los contribuyentes de la siguiente forma: "Plaintiffs also point to the definition of 'compensation' as it appears in the C.F.R. 'Compensation as applied to employees of an agency and members of the Armed Forces means wages as defined in 26 U.S.C. [sec.] 3401(a) and regulations issued thereunder.' The definition of wages under section 3401(a) includes 'all remuneration (other than fees paid to a public official) for services performed by an employee for his employer...'. The Internal Revenue Code, however, specifically exempts COLA from 'gross income' for purposes of federal tax liability. 26 U.S.C. [sec.] 912. It is plaintiffs' position that the exemption in the IRC of COLA from 'gross income' also affects the definition of 'wages' as defined by section 3401, and by reference, 31 C.F.R. section 215(2), and, by incorporation, the agreement." (Énfasis suprimido.) *Romero v. Brady*, 764 F. Supp. 227, 234 (D. P.R. 1991).

tribución recibida por servicios prestados como funcionario o empleado del Estado Libre Asociado de Puerto Rico, de cualquier estado de la Unión, de los Estados Unidos, o de cualquier subdivisión política de los mismos, o de cualquier agencia o instrumentalidad de cualesquiera de las mencionadas entidades) de cualquier clase y cualquiera que sea la forma en que se pagaren; o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso o del interés en tal propiedad; también los derivados de intereses, rentas, dividendos, beneficios de sociedades, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad; y ganancias o beneficios e ingresos derivados de cualquier procedencia. 13 L.P.R.A sec. 3022(a).

Es principio conocido que las exenciones tributarias, como gracias legislativas y derogaciones del poder soberano, no deben extenderse más allá de los términos expresos y exactos del estatuto que las otorga. Toda duda debe resolverse en contra de la existencia de la exención, pues rige la norma *expressio unius est exclusio alterius* (la mención específica de una cosa implica la exclusión de otras de igual naturaleza). *Director Of. Inspección Notarías v. Colón*, 131 D.P.R. 102 (1992). De acuerdo con lo anterior, el COLA constituye un ingreso tributable por no estar excluido expresamente por la Ley de Contribución sobre Ingresos de 1954.([12])

## V

Por último, los recurrentes sostienen que la tributación del COLA en Puerto Rico contraviene la Cláusula de la Supremacía federal, pues frustra el propósito congresional de equiparar mediante el pago del subsidio la situación

---

([12]) Alaska no impone un tributo sobre el COLA. Esto, por haber adoptado por referencia la Sec. 912 del Código de Rentas Internas federal, que excluye tal partida del ingreso bruto. Véase, Alaska Statutes Sec. 43.20.021. Por otro lado, Hawaii también adoptó por referencia las definiciones del Código de Rentas Internas federal, pero expresamente rechazó la exención federal al COLA. Véase 14 *Hawaii Revised Statutes* Sec. 7(b), Cap. 235.

económica entre los empleados federales de Washington D.C. y quienes trabajan fuera de Estados Unidos continental o en Alaska. Señalan que al eximir del tributo federal esa partida, se quiso evitar el efecto diluyente que conllevaría una carga contributiva federal y la consiguiente necesidad de aumentar el pago a los empleados. Aducen que una contribución estatal sobre el COLA tiene el mismo efecto diluyente que tenía la contribución federal y, por ende, al imponerla se obstaculiza el propósito congresional de proveer un incentivo a los empleados federales que trabajan en Puerto Rico.

Por su parte, el Procurador General niega lo anterior alegando que no hay disposición expresa ni implícita que prohíba a Puerto Rico imponer contribuciones sobre partidas recibidas en concepto del COLA.

De acuerdo con la Cláusula de la Supremacía federal —Art. VI, Sec. 2, Const. EE. UU., L.P.R.A., Tomo 1— el poder federal es supremo, y cualquier ley o actuación estatal incompatible con el poder federal es inconstitucional. R. Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico*, San Juan, Ed. C. Abo. P.R., 1986, Vol. I, pág. 410. Un estatuto federal puede desplazar a la legislación estatal sobre un asunto determinado cuando: (1) el Congreso manifiesta expresamente su intención de que ello ocurra; (2) aunque no sea expresa esa intención, ésta se pueda inferir por el establecimiento por parte del Congreso de un esquema de reglamentación federal extremadamente detallado; (3) la legislación del Congreso trata de un tema de especial interés federal, o (4) la intención de desplazar a la legislación estatal queda revelada por el propósito y las obligaciones impuestas por el estatuto federal. *Pacific Gas & Elec. v. State Energy Resources Com'n*, 461 U.S. 190 (1983).

Aunque no se den las situaciones anteriores, una legislación estatal puede quedar desplazada por el estatuto federal si: (1) el cumplimiento de ambas es físicamente im-

posible, o (2) si la ley estatal "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress". *Pacific Gas & Elec. v. State Energy Resources Com'n*, supra, pág. 204.

En el caso específico de contribuciones estatales, se debe presumir que el Congreso no pretendió desplazar a la ley estatal. No se favorece tal desplazamiento, a menos que razones poderosas indiquen, primero, que la naturaleza del interés del Gobierno federal sea tal que no permita otra conclusión o, segundo, que el Congreso lo haya ordenado sin lugar a dudas. No satisface este requisito el hecho de que el Congreso haya expresado de forma general una política pública federal que sea incompatible con el estatuto estatal. *R.J. Tobacco Co. v. Durham County*, 479 U.S. 130 (1986); *Commonwealth Edison Co. v. Montana*, 453 U.S. 609 (1981).

La pregunta que debemos contestar, por lo tanto, es si el Congreso pretendió desplazar la legislación estatal. Esta pregunta es particularmente pertinente en casos como el presente, en que el estatuto federal no lo expresa claramente y no existe un conflicto real entre ambas leyes. *Wardair Canada v. Florida Depart. of Revenue*, 477 U.S. 1 (1986).[13]

En este caso, se alega que la imposición de contribución sobre el COLA obstaculiza el propósito congresional perseguido al eximir de tributación federal al COLA. 26 U.S.C. sec. 912(2).[14] Al conceder tal exención, el Congreso explicó

---

[13] En el presente caso, el Congreso no ha prohibido expresamente a los estados que impongan un tributo sobre el COLA recibido por los empleados federales. Al contrario, en 1939 aprobó el *Public Salary Tax Act*, 4 U.S.C. sec. 111, consintiendo expresamente a que se impusiera la carga contributiva estatal a los empleados federales sobre su salario o compensación, concepto que, como ya hemos explicado, incluye al COLA. De la misma forma, no es físicamente imposible el que se exima de tributación federal una partida tributable a nivel estatal. Por lo tanto, procede evaluar únicamente si la tributabilidad del COLA es un obstáculo para el logro de los propósitos y objetivos del Congreso.

[14] Tal disposición establece, en lo pertinente, lo siguiente:

"The following items shall not be included in gross income, and shall be exempt from taxation under this subtitle:

que la imposición de contribución federal sobre el COLA anulaba la eficacia de tal partida. Debido a que el Gobierno federal no tenía los fondos necesarios para compensar a los empleados por la carga contributiva federal, se concluyó que "the exclusion of such allowances from tax consideration for this class of personnel is in the public interest". Senate Finance Committee (78th Cong. 1st Sess., S. Report 627), J.S. Seidman, *Seidman's Legislative History of Federal Income and Excess Profits Tax Laws 1953–1939*, Nueva York, Ed. Prentice Hall, 1954, Vol. 1, Sec. 116(j), pág. 1762.

Surge de lo anterior que la exención concedida es únicamente de naturaleza federal. De haber sido un impedimento a la consecución de sus propósitos la tributación estatal, el Congreso se habría expresado más claramente en su contra. Al conceder la exención mencionada, ya existía autorización, por medio del *Public Salary Tax Act*, para que los estados impusieran un tributo sobre los salarios de estos empleados. Es razonable, por ende, interpretar que al eximir de tributación federal el Congreso era consciente también del efecto de una tributación estatal, pero no consideró necesario ordenar una exención estatal.([15]) No se nos ha presentado más que una mera declaración general de política federal, que para nada prohíbe ni limita el poder de tributación de los estados. No se viola, por lo tanto, la Cláusula de la Supremacía federal.

Por último, es menester puntualizar que el Estado Libre

---

"(2) Cost-of-living allowances—In the case of civilian officers or employees of the Government of the United States stationed outside the continental United States (other than Alaska), amounts (other than amounts received under title II of the Overseas Differentials and Allowances Act) received as Cost-of-living allowances in accordance with regulations approved by the President (or in the case of judicial officers or employees of the United States, in accordance with rules similar to such regulations)." 26 U.S.C. sec. 912(2).

([15]) Los casos en que se ha invalidado alguna tributación estatal por confligir con leyes o reglamentos federales involucraban expresiones congresionales mucho más directas que la del caso de autos. Véanse: *Arizona Public Service Co. v. Snead*, 441 U.S. 141 (1979); *Maryland v. Louisiana*, 451 U.S. 725 (1981); *Exxon Corp. v. Eagerton*, 462 U.S. 176 (1983); *Pittman v. Home Owners' Corp.*, 308 U.S. 21 (1939), entre otros.

Asociado de Puerto Rico tiene un poder inherente para ejercer su poder de tributación, lo que incluye la autoridad para seleccionar los sujetos y objetos a ser tributados, y para decidir cuáles estarán exentos de tributación. *R.C.A. v. Gobierno de la Capital*, 91 D.P.R. 416, 428 (1964). En el caso citado expresamos lo siguiente:

> La Constitución dispone, Art. VI, Sec. 2, que el poder del Estado Libre Asociado de Puerto Rico para imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios se ejercerá según se disponga por la Asamblea Legislativa, y nunca será rendido o suspendido. Este Tribunal no puede estar inclinado a rendirlo fácilmente, y sólo lo anularía cuando se ejerciere en violación de las disposiciones aplicables de la Constitución del Estado Libre Asociado de Puerto Rico, o de los derechos personales garantizados por dicha Constitución—ninguna persona será privada de su libertad o propiedad sin el debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes—o si se ejerciere en violación de las obligaciones legales y morales que aceptó el pueblo en sus Relaciones Federales. *R.C.A. v. Gobierno de la Capital*, supra, pág. 440.

No se justifica en este caso rendir el poder de tributación del Estado Libre Asociado de Puerto Rico, pues no existe conflicto con la ley federal que eximió tal partida de tributación federal ni se obstaculiza su propósito.

Por lo anteriormente expuesto, estamos de acuerdo con la opinión del Tribunal y confirmaríamos la sentencia recurrida.