# 2001 DTA 125

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL V DE PONCE Y AIBONITO

### HAYDEE PEDROGO COLON Y OTROS
Apelados

v.

### HOSPITAL SAN CRISTOBAL Y OTROS
Apelantes

Núm. KLAN-00-00816

San Juan, Puerto Rico, a 16 de febrero de 2001

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Ortiz Carrión y la Juez Pabón Charneco

Pabón Charneco, Jueza Ponente

## TEXTO COMPLETO DE LA RESOLUCION

El peticionario, Hospital San Cristabal, en adelante, Hospital, nos solicita, mediante recurso de apelación, ██ la revisión de dos sentencias parciales emitidas por el Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante dicho dictamen, el tribunal de instancia resolvió Ha Lugar una *"Moción Solicitando se Dicte Sentencia Sumaria a Favor de la Parte Demandante"*.

Por las razones que expondremos a continuación, se expide el auto y se revocan las sentencias parciales emitidas por el tribunal de instancia.

I

Para la mejor comprensión de la decisión que hoy tomamos, expongamos inicialmente el trasfondo fáctico y procesal que dio base a las sentencias parciales cuyos méritos son objeto de impugnación.

Según surge del recurso, Haydee Pedrogo, en adelante señora Pedrogo, se desempeñaba como enfermera epidemióloga del Hospital desde 1989. ██ El 6 de julio de 1998, sufrió un accidente en su área de trabajo del que resultó lesionada, reportándose a la Corporación del Fondo del Seguro del Estado, en adelante, F.S.E.

El accidente sufrido por la señora Pedrogo la mantuvo en descanso a partir de ese mismo 6 de julio de 1998 hasta el 31 de agosto de 1998, inclusive, día en que el F.S.E. le concedió autorización para regresar a su trabajo.

Se alega que el 17 de agosto de 1998, el Hospital reclasificó a la señorita Carmen T. Colón Malavé, una joven de 27 años, enfermera de profesión, para que llevara a cabo las funciones que realizaba la señora Pedrogo.

Así las cosas, el 1 de septiembre de 1998, la señora Pedrogo regresó a su trabajo. Se alega que, al momento de reintegrarse a su trabajo en el Hospital, ella no se reportó ni con la Directora de Personal, ni con el Administrador hasta transcurrida una semana.

Posteriormente, el 11 de septiembre de 1998, el Hospital le notificó la señora Pedrogo que en lo sucesivo ocuparía el puesto de enfermera vigilante, que como tal prestaría sus servicios en los Centros de Diagnóstico y Tratamiento ubicados en los pueblos de Juana Díaz y Villalba. Además le informó que continuaría devengando el mismo salario que hasta ese entonces recibía como enfermera epidemióloga, ya que la nueva posición era (al igual que la anterior) una de nivel administrativo. El Hospital justificó esta decisión al patrón de ausentismo exhibido por la señora Pedrogo durante los meses de julio de 1997 a julio de 1998. Durante dicho período de tiempo, ella se ausentó a su trabajo en 65.5 días.

La señora Pedrogo no aceptó la posición de enfermera vigilante y regresó en recidiva al F.S.E. el 14 de septiembre de 1998. El 24 de septiembre de 1999, el Hospital, mediante carta, despidió a la señora Pedrogo debido al rechazo de ella a la posición de enfermera vigilante.

Por su parte, y previo a su despido, el 31 de marzo de 1999, la señora Pedrogo presentó una demanda alegando, como primera causa de acción, que luego de ser dada de alta por el F.S.E., ██ se le negó la reintegración a su plaza de enfermera epidemióloga en contravención del Art. 5(a) de la Ley Núm. 45 de 18 de abril de 1935, según enmendada, conocida como "*Ley del Sistema de Compensaciones por Accidentes del Trabajo*", 11 L.P.R.A. § 7. Como segunda causa de acción, al amparo de la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. § 146, alegó que fue discriminada por razón de edad. El Hospital contestó la demanda el 6 de julio de 1999 y la enmendó posteriormente, el 22 de octubre de 1999.

El 3 de diciembre de 1999, el Hospital presentó "*Moción de Sentencia Sumaria*". ██ La señora Pedrogo hizo lo propio, el 13 de diciembre de 1999, cuando presentó su "*Moción Solicitando se Dicte Sentencia Sumaria a Favor de la Parte Demandante*".

Sometidas las solicitudes de sentencia sumaria por las partes, el tribunal de instancia acogió la solicitud de la señora Pedrogo y, en su consecuencia, emitió dos sentencias sumarias parciales. Ambas sentencias parciales tenían fecha de 15 de junio de 2000 y fueron notificadas el 20 de junio de 2000. A tales efectos, en estas sentencias parciales, el tribunal de instancia determinó, por la vía sumaria, que el Hospital San Cristóbal, actuando como patrono de la señora Pedrogo, incurrió en sendas violaciones de las Leyes Núms. 45 y 100, *supra*.

Oportunamente, el 5 de julio de 2000, el Hospital presentó "*Moción de Reconsideración*". En la misma alegó que no se violó la Ley Núm. 45, *supra*, por cuanto se le reservó la plaza a la señora Pedrogo, pues ella se desempeño en dicha plaza luego de ser dada de alta el 31 de agosto de 1998. Alegó también que no procedía se determinara que el Hospital había incurrido en violación a Ley Núm. 100 sin prueba alguna o, por lo menos, sin realizar una vista evidenciaria al respecto.

En vista de que el tribunal de instancia no actuó sobre dicha moción, el Hospital, inconforme, recurre ante nos, el 20 de julio de 2000.

El 25 de agosto de 2000, recibimos escrito en oposición a la expedición del auto. Procedemos, según lo intimado.

## II

En su escrito, el Hospital plantea que erró el tribunal de instancia al determinar que procedía dictar sentencia por la vía sumaria a favor de la señora Pedrogo en ambas causas de acción, y en dictar dichas sentencias a pesar de que dicho foro reconoció que existían controversias en cuanto a los hechos.

# III

La controversia ante nuestra consideración se enmarca dentro del contexto de una solicitud de sentencia sumaria. La Regla 36.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.2, es la que le permite a una parte presentar una moción basada o no en declaraciones juradas, para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de una reclamación. *Partido Acción Civil v. Estado Libre Asociado de Puerto Rico*, 150 D.P.R. __ (2000), **2000 J.T.S. 33**, a la pág. 681; *Piñero González v. Autoridad de Acueductos y Alcantarillados*, 146 D.P.R. __ (1998), **98 J.T.S. 140**, a la pág. 216; *Mattei Nazario v. Vélez & Asoc*, 145 D.P.R. __ (1998), **98 J.T.S. 55**, a la pág. 924; *Soto v. Caribe Hilton*, 137 D.P.R. 294, 300 (1994).

Así también, la Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.3, autoriza al tribunal a dictar sentencia sumaria cuando *"no existe controversia real sustancial en cuanto a ningún hecho material, y ... como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente"*. Véase, en general, *Partido Acción Civil v. Estado Libre Asociado de Puerto Rico*, **2000 J.T.S. 33,** a la pág. 681; *Soto Vázquez v. Rivera Alvarado,* 144 D.P.R. __ (1997), **97 J.T.S. 145**, a la pág. 368; *Rodríguez v. Secretario de Hacienda,* 135 D.P.R. 219, 222 (1994); *Tello v. Eastern Air Lines*, 119 D.P.R. 83, 86 (1987); *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 D.P.R. 714, 720 (1986).

Además, esa misma Regla 36.3 de Procedimiento Civil autoriza a que se dicte sentencia sumaria inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demuestran que no hay controversia real sustancial en cuanto a ningún hecho pertinente y que como cuestión de derecho debe dictarse la misma a favor de la parte promovente.

El propósito principal de este mecanismo es propiciar la resolución justa, rápida y económica de litigios que no presentan controversias genuinas de hechos materiales, por lo que no se justifica la celebración de un juicio en su fondo. Utilizado correctamente, este vehículo procesal contribuye a descongestionar los calendarios judiciales. *Partido Acción Civil v. Estado Libre Asociado de Puerto Rico*, **2000 J.T.S. 33,** a las págs. 681-83; *López Stubbe v. Gus Lallande,* 144 D.P.R. __ (1998), **98 J.T.S. 9**, a la pág. 523; *Neca Mortgage Corporation v. A & W Developers S.E.,* 137 D.P.R. 860, 869 (1995); *Pilot Life Insurance Company v. Crespo Martínez*, 136 D.P.R. 624, 632 (1994); *Hurtado Latre v. Osuna y Fresse*, 138 D.P.R. 801, 809 (1995); *PFZ Properties, Inc. v. General Accident Insurance Co.,* 136 D.P.R. 881 (1994); *Caquías Mendoza v. Asoc. Residentes Mansiones de Río Piedras*, 134 D.P.R. 181 (1993); *Cuadrado Lugo v. Santiago Rodríguez*, 126 D.P.R. 272 (1990).

En el proceso de determinar si la Regla 36.3, *supra*, es un vehículo apropiado para disponer total o parcialmente de una demanda, el Tribunal Supremo ha expresado que *"[e]l sabio discernimiento es el principio rector para su uso, porque mal utilizado puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido procedimiento de ley. Es por esta razón que el tribunal debe cerciorarse de la total inexistencia de controversias de hechos"*. (Enfasis nuestro.) *Management Administration Services Corp. v. E.L.A.*, res. el 29 de diciembre de 2000, **2000 J.T.S. 189**; *Consejo de Titulares del Condominio Parkside v. M. G.I.C. Financial Corp.,* 128 D.P.R. 538, 548 (1991); *González v. Alicea*, 132 D.P.R. 638, 646-647.

La sentencia sumaria procede en casos claros cuando el Tribunal tiene ante sí la verdad sobre todos los hechos pertinentes y no hace falta una vista evidenciaria. *Medina Morales v. Merck, Sharp & Dohme Química de Puerto Rico, Inc.*, 135 D.P.R. 716, 726-727 (1994); *J.A.D.M. v. Centro Com. Plaza Carolina,* 132 D.P.R. 785, 802 (1993). De ordinario, si existen dudas sobre la procedencia de la sentencia sumaria, el Tribunal debe brindar a las partes la oportunidad de una vista evidenciaria. Véanse, *Rivera Rodríguez v. Departamento de Hacienda*, 149 D.P.R. __ (1999), **99 J.T.S. 144**, a la pág. 53; *Bonilla Medina v. Partido Nuevo Progresista*, 140 D.P.R. __ (1996), **96 J.T.S. 33**, a la pág. 790; *Rivera v. Superior Pkg., Inc.*, 132 D.P.R. 115, 133 (1992).

Debemos añadir que al dictarse una sentencia sumaria, no se pueden poner en peligro o lesionar los intereses de las partes. La parte que solicita la sentencia sumaria en un pleito tiene la obligación de demostrar, fuera de toda duda, la inexistencia de una controversia real sobre todo hecho pertinente que a la luz del derecho

sustantivo determinaría una sentencia a su favor. *Hurtado Latre v. Osuna, supra.* El mecanismo procesal de sentencia sumaria, por ser un remedio discrecional extraordinario, debe ser utilizado en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes. *PFZ Properties v. General Accident Insurance Corp., supra.* La determinación de disponer de un pleito mediante este mecanismo es una que está confiada a la discreción del foro de primera instancia. *Id.*, a la pág. 914 (1994).

Una vez la moción de sentencia sumaria ha sido presentada y se sostenga en la forma provista por la Regla 36 de las de Procedimiento Civil, la parte contraria no puede descansar solamente en las aseveraciones o negaciones contenidas en su demanda, sino que viene obligada a contestar en forma tan detallada y específica, como lo hubiere hecho la parte promovente, exponiendo los hechos pertinentes a la controversia que demuestren que existe una controversia real que debe ser dilucidada en un juicio. De no hacerlo, debe dictarse sentencia sumaria en su contra, si procediere en derecho. Véase, la Regla 36.6 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.6; *Audiovisual Language v. Sistema de Estacionamiento Natal Hermanos,* 144 D.P.R. ___ (1997), **97 J.T.S. 147**, a la pág. 400; *Management Administration Services Corp. v. E.L.A.*, res. el 29 de diciembre de 2000, **2000 J.T.S. 189**; *PFZ Properties v. General Accident Insurance Co.*, 136 D.P.R. a las págs. 912-913; *Pilot Life Insurance Company v. Crespo Martínez,* 136 D.P.R. a la pág. 632; *Soto Vázquez v. Rivera Alvarado,* **97 J.T.S. 145**, a las págs. 368-369; *Pilot Life Insurance Company v. Crespo Martínez,* 136 D.P.R. 624, 632 (1994).

Al dictar sentencia sumaria, el tribunal: (1) analizará los documentos que acompañan la moción solicitando sentencia sumaria y los documentos incluidos con la moción de oposición y aquéllos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. El tribunal no debe dictar sentencia sumaria cuando: (1) existen hechos materiales no controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción, una controversia real sobre algún hecho material; o (4) como cuestión de derecho no procede. *Management Administration Services Corp. v. E.L.A.*, res. el 29 de diciembre de 2000, **2000 J.T.S. 189**; *PFZ Properties v. General Accident Insurance Corp., supra,* a las págs. 913-914.

Por último, el procedimiento de sentencia sumaria no permite que el tribunal dirima cuestiones de credibilidad. *PFZ Properties v. General Accident Insurance Corp., ante; Col. de Ing. y Agrim. P.R. v. A.A.A.,* 131 D.P.R. 735, 781 (1992). Ante una moción de sentencia sumaria que presenta hechos pertinentes en controversia, el tribunal no puede juzgar cuestiones de hechos, sino que su autoridad se circunscribe a determinar si hay cuestiones que deben dilucidarse en juicio. *Sucn. Meléndez v. DACO,* 112 D.P.R. 86, 89 (1982).

El mecanismo procesal de sentencia sumaria no es aconsejable en casos donde hay elementos subjetivos, propósitos mentales o negligencia, ni cuando el factor credibilidad es esencial, como en los casos de despido discriminatorio. Así, en *García López v. Méndez García,* 88 D.P.R. 363, 380 (1963), el Tribunal Supremo expresó que:

*"Si bien la Regla 36 no queda excluida como cuestión de derecho de ningún procedimiento en particular. .. hay litigios y controversias que por la naturaleza de los mismos no hacen deseable o aconsejable el resolverlos mediante una sentencia sumariamente dictada, porque difícilmente, en tales casos, el Tribunal puede reunir ante sí toda la verdad de los hechos a través de "affidávits" o deposiciones. Este caso [de discrimen] es típico de una de esas controversias, donde hay elementos subjetivos envueltos, y de intención y propósitos mentales, donde el factor de credibilidad juega un papel esencial, si no el decisivo, para llegar a la verdad, y donde un litigante depende en gran parte de lo que extraiga del contrario en el curso de un juicio vivo."* (Enfasis en original.) Véase además, *Rivera v. Depto. de Hacienda,* 149 D.P.R. ___ (1999), **99 J.T.S. 144**, a la pág. 53; *Elías y otros v. Chenet y otros,* 147 D.P.R. ___ (1999), **99 J.T.S. 11**, a la pág. 555.

En *Soto v. Hotel Caribe Hilton*, 137 D.P.R. 294 (1994), se reiteró la doctrina de que los casos en que se alega discrimen en el empleo, deben ser rigurosamente examinados por los tribunales con un análisis detenido y juicioso de los hechos, ya que, de ordinario, esos casos contienen elementos subjetivos y hay que hacer unas determinaciones de credibilidad, por lo que no se favorece la adjudicación sumaria de ellos, sino la celebración de un juicio en su fondo.

Nos dice el Tribunal Supremo en *Soto v. Hotel Caribe Hilton, supra*, a la pág. 308, que ello cobra una mayor importancia cuando se trata de una reclamación de tan alto interés público como lo es el discrimen en el empleo. El uso del mecanismo de sentencia sumaria tiene que ser mesurado y procederá sólo cuando el tribunal quede claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y que, por lo tanto, una vista en los méritos resulta innecesaria".

## IV

Por otro lado, la Ley Núm. 100, *supra*, prohíbe el discrimen en el empleo por razón de edad, raza, color, sexo, origen social o nacional, condición social o ideas políticas o religiosas. Entre los actos que pueden ser considerados como discriminatorios, se encuentran el despido, la suspensión o los cambios injustificados en torno al sueldo, salario, jornal o compensación, términos, categorías, condiciones o privilegios de trabajo, etc. ▪

En su Art. 3, ▪ la Ley Núm. 100, *supra*, establece una presunción de discrimen cuando el despido se hace sin una justa causa: *"[s]e presumirá que cualquiera de los actos mencionados en los artículos precedentes fueron cometidos en violación de la ley, cuando los mismos hayan sido realizados sin justa causa. Esta presunción será de carácter controvertible". Báez García v. Cooper Labs., Inc.*, 120 D.P.R. 145, 155 (1987).

El Tribunal Supremo, en *Báez García*, acogió como punto de referencia para determinar lo que es justa causa las disposiciones de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada. ▪ A su vez, el Art. 2, ▪ de dicha Ley establece, a su vez, las circunstancias que se consideran como justa causa. Dicho artículo reza, en lo pertinente:

*"Se entenderá por justa causa para el despido de un empleado de un establecimiento:*

*(a) Que el obrero siga un patrón de conducta impropia o desordenada.*

*(b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente, o en violación a las normas de calidad del producto que se produce o maneja por el establecimiento.*

*(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento, siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.*

*(d) Cierre total, temporero o parcial de las operaciones el establecimiento.*

*(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.*

*(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalezcan al momento del despido.*

*..."*.

Una vez activada la presunción de discrimen, de acuerdo a lo dispuesto en la Regla 14 de las Reglas de Evidencia, 32 L.P.R.A. Ap. IV, R. 14, se transfiere al demandado el peso de persuadir al juzgador de que el despido no fue discriminatorio. Es decir, corresponde entonces al patrono demostrar, con preponderancia de la prueba, que no discriminó. *Soto v. Hotel Caribe Hilton*, 137 D.P.R. 294 (1994); *Odriozola v. S. Cosmetic Dist. Corp.*, 116 D.P.R. 485, 502 (1985); *Ibáñez v. Molinos de P.R.*, 114 D.P.R. 42, 51-52 (1983). Al elaborar sobre el efecto de esta presunción, en comparación con el efecto de las presunciones en el ámbito federal, el Tribunal Supremo ha señalado.

*"En este contexto, la presunción establecida por nuestra Ley Núm. 100, contra discrimen, significa que el patrono demandado viene obligado a probar que el despido no fue discriminatorio. Nuevamente, es preciso señalar la diferencia con la doctrina federal. En nuestra jurisdicción no es necesario que el patrono afirmativamente "articule" una explicación razonable para el despido, aunque en la práctica ésta sería la forma más certera y conveniente de destruir la presunción. Basta con que pruebe, aun mediante evidencia circunstancial, que la razón para el despido no fue discriminatoria para que la presunción quede destruida. Esto último, sin embargo, ha de hacerse mediante preponderancia de la prueba, lo que representa un quántum mayor de prueba que el exigido en la jurisdicción federal. Por otro lado, debe notarse que si el demandado efectivamente prueba la inexistencia del discrimen, concluirá la controversia y resultará innecesaria otra prueba adicional."* (Énfasis suplido) *Ibáñez v. Molinos de P.R., Inc., supra*, a la pág. 53.

Este esquema dispuesto en la Ley Núm. 100, *supra*, contrasta con aquél impuesto por la Ley Federal de Discrimen por Edad en el Trabajo (ADEA), 29 U.S.C.A. secs. 623 *et seq*. Esta ley establece una causa de acción a favor de toda persona, entre los 40 y 70 años de edad, que hubiere sido despedida o rechazada de un empleo por razón de su edad. Además, concede jurisdicción concurrente a los tribunales estatales para dirimir una controversia a su amparo. 29 U.S.C.A. sec. 626 (c) (1).

El esquema establecido en ADEA requiere al empleado que pruebe que el patrono lo trató desfavorablemente por razón de su edad, lo que hace indispensable establecer la existencia de una intención discriminatoria. Ante la dificultad inherente de probar este elemento, el Tribunal Supremo federal desarrolló un estándar de prueba especial en *McDonell Douglas Corp. v. Green*, 411 U.S. 792 (1972) y en *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981) Dicho estándar impone al demandante el deber inicial de establecer un caso *prima facie* de discrimen probando que: (1) pertenece a la clase protegida por el estatuto; es decir, que tiene más de cuarenta años de edad, (2) está cualificado para ejercer las funciones del empleo, (3) a pesar de estar cualificado, fue despedido, y (4) fue sustituido por una persona más joven. Al probar estos elementos, se establece una especie de presunción de discrimen, por la cual la parte demandada queda en la obligación de ofrecer una explicación razonable no discriminatoria. *López Vicil v. ITT Intermedia*, 142 D.P.R. ___ (1997), **97 J.T.S. 42**, a la pág. 837; *Soto v. Hotel Caribe Hilton, supra*, a la pág. 302.

El efecto de establecer un caso *prima facie* de discrimen es el de imponer al demandado la obligación de articular una explicación razonable que, de ser creída por el tribunal, sería suficiente para justificar el despido. Para rebatir la presunción no es menester convencer al juzgador de que ésta fue la verdadera causa. Tampoco precisa que esa explicación constituya, en estricto derecho, justa causa para el despido. Sólo debe ser suficiente para sostener la conclusión de que el motivo determinante del despido no fue discriminatorio. Si el demandado es incapaz de producir esta evidencia, el juzgador vendrá obligado a concluir que el despido fue discriminatorio.

Ahora bien, aun si el demandado alega una justificación razonable, no concluye la controversia. En esa situación debe dársele oportunidad al demandante de demostrar, mediante preponderancia de la prueba, que el motivo aducido constituye un mero pretexto y, en realidad, ha habido discrimen. Esto se puede lograr, entre otras formas, mediante evidencia circunstancial o estadística de otros individuos en la misma situación del demandante que, o bien se les ha discriminado por la misma razón o han sido retenidos por no pertenecer al mismo grupo objeto de discrimen. *Ibáñez v. Molinos de P.R., Inc., supra*, a la pág. 49; *Texas Department of Community Affairs v. Burdine, supra*, a las págs. 254-256.

Recapitulando, la Ley Núm. 100, *supra*, y la federal difieren en cuanto al efecto de la presunción que el demandante tiene a su disposición en este tipo de caso. En este sentido, la legislación local le es más favorable al demandante que su contraparte federal. La legislación local requiere del demandado una prueba más vigorosa para rebatir la presunción.

## V

Por otro lado, la Ley Núm. 45, *supra*, ■ establece el deber de los patronos de compensar a sus empleados lesionados o accidentados en el curso de su empleo, establece un sistema de seguros y un método para proceder con las reclamaciones. *García v. Darex P.R., Inc.*, 148 D.P.R. __ (1999), **99 J.T.S. 84**, a la pág. 1055; *Ortiz Pérez v. F.S.E.*, 137 D.P.R. 367 (1994).

Asimismo, dicha ley le impone a todo patrono la obligación de asegurar a sus empleados en el Fondo del Seguro del Estado ■ y a cumplir con lo prescrito por el Art. 5 (a) de esta ley, el cual reza:

*"En los casos de inhabilitación para el trabajo de acuerdo con las disposiciones de este Capítulo, el patrono vendrá obligado a reservar el empleo que desempeñaba el obrero o empleado al momento de ocurrir el accidente y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:*

*(1) Que el obrero o empleado requiera al patrono para que lo reponga en su empleo dentro del término de quince días, contados a partir de la fecha en que el obrero o empleado fuere dado de alta, y siempre y cuando que dicho requerimiento no se haga después de transcurridos doce meses desde la fecha del accidente;*

*(2) que el obrero o empleado esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono su reposición, y*

*(3) que dicho empleo subsista en el momento en que el obrero o empleado solicite su reposición. (Se entenderá que el empleo subsiste cuando el mismo está vacante o lo ocupe otro obrero o empleado. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro obrero o empleado dentro de los treinta días siguientes a la fecha en que se hizo el requerimiento de reposición.) 11 L.P.R.A. sec. 7."*

El Tribunal Supremo ha resuelto, reiteradamente, que *"[e]l Artículo 5(a) establece dos tipos de protección para el obrero que sufre un accidente del trabajo y se reporta y acoge a los beneficios que ofrece la Ley de Compensaciones por Accidentes del Trabajo. Primero, le impone al patrono el deber de reservarle al obrero por doce (12) meses el empleo en que se desempeñaba al momento de ocurrir el accidente. En segundo lugar, el trabajador tiene derecho a que lo repongan en ese mismo empleo, una vez es dado de alta por el Fondo, [si] solicita del patrono que lo repongan y si se dan las tres condiciones establecidas en dicho artículo". García v. Darex P.R., Inc., supra.* Hemos resaltado de esta forma que en adición al derecho de reinstalación que provee el Art. 5(a), también se le impone la obligación al patrono de reservarle el empleo al obrero lesionado o enfermo, por un período de doce (12) meses, desde la ocurrencia del accidente o enfermedad. *Id.*, a la pág. 1056.

El propósito del Art. 5 (a) de la Ley Núm. 45, *supra*, es requerirle al patrono que reserve la plaza de su empleado para permitirle al empleado recuperarse. *Id.* De esta forma, el Art. 5(a) garantiza que el obrero que sufre un accidente o enfermedad ocupacional acuda al F.S.E. para el tratamiento médico correspondiente sin temor a ser despedido. *Carrón Lamoutte v. Compañía de Turismo*, 130 D.P.R. 70 (1992). La reserva de doce (12) meses logra que el obrero no tenga que enfrentarse a la incertidumbre indeseable de que por haber sufrido un accidente de trabajo su patrono lo despida, a la vez que promueve un ambiente de tranquilidad en el cual el obrero puede recuperarse con mayor celeridad. *García v. Darex P.R., Inc., supra.*

El Art. 5 (a) le exige al patrono que reserve el empleo de un obrero lesionado, mientras continúe inhabilitado y recibiendo tratamiento bajo el F.S.E. por un término de doce (12) meses desde la fecha del accidente de trabajo. Si, por el contrario, el obrero es dado de alta por el Fondo antes de transcurrido el término

de doce (12) meses, y no solicita la reinstalación, conforme le exige el Art. 5 (a), el patrono queda liberado de su obligación de preservar el empleo. *Ibid.*, a la pág. 1056.

Del artículo antes citado se puede colegir que existen varios requisitos que el empleado debe satisfacer antes de poder solicitar la reinstalación de conformidad con el Art. 5a. Así, por ejemplo: el empleado tiene que requerirle al patrono que lo reponga en su empleo dentro de quince (15) días, contados a partir de la fecha en que el empleado fuere dado de alta, y siempre y cuando que dicho requerimiento no se haga después de transcurridos doce (12) meses desde la fecha del accidente; y que el empleado esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono su reposición. *García v. Darex P.R, Inc., supra; Matías v. Mun. de Lares*, 150 D.P.R. __ (2000), **2000 J.T.S. 57**.

Un empleado que no satisface estos requisitos, de ordinario, y aunque haya sido despedido dentro del período de reserva, no tendrá derecho a la reinstalación, ni a los salarios que hubiere devengado de haber sido reinstalado. *García v. Darex P.R., Inc., supra*, a la pág. 1057.

Sobre el incumplimiento por parte del patrono, el Art. 5a dispone: *"...[s]i el patrono no cumpliere con las disposiciones de esta sección, vendrá obligado a pagar al obrero o empleado, o a sus beneficiarios, los salarios que dicho obrero o empleado hubiere devengado de haber sido reinstalado; además le responderá de todos los daños y perjuicios que le haya ocasionado. El obrero o empleado, o sus beneficiarios, podrán instar y tramitar la correspondiente reclamación de reinstalación y/o daños en corte por acción ordinaria o mediante procedimiento para reclamación de salarios, establecidos en las secs. 3118 a 3132 del Título 32"*. ■■■

Sin embargo, la protección que ofrece el Art. 5a al obrero no es absoluta. *Santiago v. Kodak*, 129 D.P.R. 763, 770 (1992). Un patrono podrá despedir a un empleado inhabilitado y acogido al Fondo, durante los doce meses de reserva que establece el Art. 5a, sólo si mediase justa causa, conforme ejemplificado por el Art. 2 de la Ley Núm. 80. *García v. Darex, P.R., Inc., supra*, a la pág. 1058.

## VI
Procede entonces analizar los hechos de este caso, a la luz de los principios reseñados.

Sin ánimo de entrar a los méritos del caso de autos, luego de un ponderado análisis de las deposiciones y documentos que obran en el expediente, entendemos que existen controversias de hechos medulares en el caso que nos ocupa que impiden sea adjudicado por la vía sumaria.

Primeramente, con relación al discrimen por razón de edad, el Tribunal de Primera Instancia basó su determinación en los siguientes hechos que son incontrovertibles desde su perspectiva. Dice dicha sentencia parcial:

*"La prueba documental sometida por la demandante establece sin contradicción alguna, que Haydée Pedrogo Colón, de 51 años, la plaza de enfermera epidemióloga en el Hospital San Cristóbal, que ésta cumplía con todos los requisitos académicos, es decir, una maestría en epidemiología y la experiencia para desempeñar la posición. Que fue sustituida por Carmen Colón Malavé de 27 años de edad, esto es veinticuatro menos. Que apenas en abril de 1998, doña Carmen habría recibido la acreditación para desempeñarse en esa posición por lo que su primera experiencia de trabajo como epidemióloga fue el 17 de agosto de 1998 cuando sustituyó a la empleada demandante. Esto es un hecho incontrovertido."*

Concluye el tribunal, que la recurrida presentó un caso *prima facie* de discrimen bajo la Ley Núm. 100, *supra*, y citando a *Ibáñez v. Molinos de Puerto Rico*, 114 D.P.R. 42 (1983), indicó que el patrono venía obligado a presentar prueba para sostener que el despido no fue discriminatorio mediante una explicación razonable de su acción.

Por su parte, el Hospital planteó en varios escritos que obran en el expediente, que el cambio de posición de la señora Pedrogo se debía a que el Hospital había recibido amonestaciones del Departamento de Salud por aparentes tardanzas en los reportes de epidemiología que el Hospital debía presentar a dicha agencia. Alegó también, que entre las funciones de la enfermera epidemióloga se encuentra el realizar informes semanales, mensuales y trimestrales al Departamento de Salud sobre los pacientes con enfermedades contagiosas en el Hospital. Asimismo alegó el Hospital, que de la deposición de la señora Pedrogo se desprendía que ella "*tenía un problema de ausentismo severo que impedía el cumplimiento de las funciones de una enfermera epidemióloga*". Además, se alegó, que cuando la señora Pedrogo se reportó al F.S.E. la sustituyeron interinamente con la señorita Colón Malavé, lo cual no está prohibido por ley. Por último, planteó que cuando la señora Pedrogo regresó a sus labores, su puesto estaba reservado y que la decisión de relevarla de su empleo para nombrar en propiedad a la señorita Colón Malavé se tomó luego de que la señora Pedrogo se reintegrara a su puesto. ¿Constituyen las alegaciones del Hospital una justificación razonable, a tal grado que podrían rebatir, de probarse en su día, la presunción de discrimen que estableciera la señora Pedrogo? Resolvemos en la afirmativa.

Primero, este Tribunal toma conocimiento judicial que el Departamento de Salud es quien por virtud de ley regula a los hospitales y tiene el poder de requerirle toda clase de informes. Ley Núm. 101 de 26 de julio de 1965, según enmendada, conocida como Ley de Facilidades de Salud, 24 L.P.R.A. secs. 331 y ss. Además, que estos informes son utilizados por el Departamento de Salud para cumplir con algunos de sus deberes ministeriales, tales como: detectar epidemias, preparar informe anual para el gobernador, llevar estadísticas vitales y aquéllas que fueren necesarias para el desempeño de sus funciones, entre otras. Ley Núm. 81 del 14 de marzo de 1912, según enmendada, 3 L.P.R.A. secs. 171 y ss. Cabe añadir que cualquier incumplimiento a los Reglamentos emitidos por el Departamento de Salud por parte de cualquier facilidad de salud, podría conllevar la suspensión de las licencias emitidas y necesarias para operar este tipo de facilidad. Ley Núm. 101, *supra*, 24 L.P.R.A. sec. 333(g).

De lo anterior podemos colegir que las alegaciones del Hospital sobre los requerimientos de informe eran una razón que, de probarse en su día, podrían justificar nombrar a una persona que llevara a cabo dichas funciones durante las ausencias y el tiempo en que la señora Pedrogo estuvo bajo tratamiento con el F.S.E. El Hospital no podía esperar que ella se reintegrara a su posición para cumplir dichos requerimientos, so pena de perder las consabidas licencias y acreditaciones.

Cabe añadir que la posición de enfermera epidemiológica es una que requiere, además del bachillerato en enfermería, una especialización para conseguir el certificado que la acredita como tal; viene obligada a comparecer a una serie de reuniones anuales, entre otros requisitos necesarios por ley; es decir, no puede ser ocupada por cualquier enfermera graduada. Esto debe reducir bastante el número de enfermeras que pudieran resultar candidatas elegibles a dicha posición, por lo que el tribunal de instancia, en un juicio plenario, puede auscultar sobre: ¿cuántas personas tenía disponible y cualificadas para esa posición? De existir otros candidatos, ¿qué edades, experiencia y antigüedad tenían con el hospital? ¿Cuál fue la intención y propósito mental, así como también los elementos subjetivos en la decisión del Hospital al nombrar a la señorita Colón Malavé?

Como vemos, las alegaciones del Hospital sobre este particular podrían constituir una explicación razonable de su acción, pero se hace necesario un juicio en sus méritos donde el factor de credibilidad, que juega un papel decisivo en estos casos, pueda ser extraído por el juzgador de los hechos. Este Tribunal entiende que erró el tribunal de instancia al resolver que existía un caso *prima facie* de discrimen bajo la Ley Núm. 100, *supra*, y al indicar que el patrono no ofreció una explicación razonable para sostener que el despido no fue discriminatorio.

Dicho lo anterior, pasemos al otro asunto que nos ocupa, la causa de acción que surge al amparo el Art. 5(a) de la Ley Núm. 45, *supra*.

Surge del expediente que la señora Pedrogo, previo a reportarse al F.S.E., se había ausentado bastante a su

trabajo. Ciertamente, se desprende de todas las deposiciones que obran en nuestro expediente que ella incurrió en patrón de ausentismo. No existe controversia sobre este hecho. En lo que sí existe controversia y no está claro para este Tribunal (ni surge claro del expediente), es la naturaleza de esas ausencias. Es decir, durante el período que comprende de julio de 1997 a julio de 1998, en que la señora Pedrogo se ausentó en 65.5 ocasiones, ¿cuántas fueron ausencias justificadas? ¿Cuántas fueron ausencias por enfermedad? ¿Estuvo de vacaciones durante ese período de tiempo? Y si lo estuvo, ¿cuántos días fueron? Estas interrogantes deben ser aclaradas en un juicio en sus méritos para así poder escudriñar si se justificaba el cambio de posición que sufriera la señora Pedrogo por parte del Hospital.

Abona a lo anterior, el hecho que ella se había retrasado en la preparación de los informes que, como parte de sus deberes de enfermera epidemióloga, le requería su patrono. De la misma manera, el foro de instancia debe indagar sobre la seriedad de los atrasos en dichos informes, pues es esencial a nuestra controversia, pues se podrían descubrir las intenciones y propósitos mentales del cambio de posición ya reseñado.

De otro lado, al reintegrarse la señora Pedrogo, el 1 de septiembre de 1998, a su trabajo, estuvo hasta el 11 de septiembre de 1998 trabajando sin hablar o reportarse con sus superiores. Posteriormente, el 11 de septiembre de 1998 (mediante una carta) es que se le informa a la señora Pedrogo que fue reasignada a la posición de enfermera vigilante. ¿Qué hizo durante esos diez días que trabajó? ¿Se desempeñó como enfermera epidemióloga hasta el 11 de septiembre de 1998? ¿Requirió su antigua plaza al Hospital antes de ser reasignada? Nuevamente surge la pregunta, ¿ocupaba la posición en propiedad la señorita Colón Malavé para el 1 de septiembre de 1998? Estas interrogantes también deben ser investigadas por el foro de instancia.

Así, pues, la señora Pedrogo regresa en recidiva al F.S.E. y, es dada de alta final, el 18 de febrero de 1999. El Hospital se niega a reinstalarla como enfermera epidemióloga, pues él alegaba que la posición que ella ocupaba al momento de regresar del F.S.E. por segunda ocasión, era de enfermera vigilante y esa posición era la que estaba disponible para ella. La señora Pedrogo no aceptó dicha posición y fue despedida el 24 de septiembre de 1999. Como podemos apreciar, de lo anterior se desprende una controversia sobre qué posición venía obligado el patrono a ofrecerle a la señora Pedrogo al regresar por segunda ocasión del F.S.E. Regresamos por un momento al período de 10 días -del 1 al 11 de septiembre de 1998-, ¿podía el patrono asignarle una nueva posición a la señora Pedrogo dentro de ese período? ¿Esa decisión fue basada en las ausencias de ella? ¿Responde dicha decisión a otras razones, intenciones o propósitos mentales del patrono? Por tercera vez surge la interrogante, ¿ocupaba la posición en propiedad la señorita Colón Malavé para el 1 de septiembre de 1998 de manera que anule esta reasignación al demostrarse que nunca se le reinstaló en la misma posición como requiere el Art. 5(a)? Estas interrogantes, de igual forma, hacen necesaria la celebración de una vista en los méritos para ser dilucidadas.

Ciertamente, en el presente caso existen controversias de hechos esenciales e innumerables lagunas que versan sobre la credibilidad que deben ser adjudicadas por el Tribunal de Primera Instancia en un juicio en los méritos, donde se escudriñe el motivo o la intención de las partes en cuanto a las alegaciones de discrimen, reinstalación en virtud del Art. 5 (a) de la Ley Núm. 45 y el despido. De ahí que el juzgador pueda reunir ante sí, toda la verdad de los hechos y donde se realicen las determinaciones de credibilidad que correspondan. No se debe perder de vista que el objetivo de todo procedimiento judicial, es el esclarecimiento de la verdad y sólo se hace justicia cuando se conoce la verdad. *Pueblo v. Ribas*, 83 D.P.R. 386, 389 (1961).

# VII

Por los fundamentos expresados, se expide el auto y se revocan las sentencias recurridas y se ordena la continuación de los procedimientos.

Lo acordó y manda el Tribunal y lo certifica la Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General

## ESCOLIOS 2001 DTA 125

**1.** El recurso presentado resulta inexacto, tratándose de sentencias parciales que no constituyen una adjudicación final, conforme a la Regla 43.5 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 42.3, que son en realidad resoluciones interlocutorias. *First Fed. Savs. v. Nazario*, 138 D.P.R. 872 (1995). Su revisión ante nos, debe ser mediante el vehículo procesal del *certiorari*; así fue acogido por este Tribunal.

**2.** La recurrida comenzó a trabajar en el Hospital en el 1983.

**3.** El 18 de febrero de 1999, fue dada de alta por la C.F.S.E. y se reportó el 22 de febrero de 1999.

**4.** El 27 de diciembre de 1999, el Hospital presentó Moción para Suplementar la Moción de Sentencia Sumaria.

**5.** 29 L.P.R.A. sec. 146.

**6.** 29 L.P.R.A. sec. 148.

**7.** 29 L.P.R.A. sec. 185a *et. seq.*

**8.** 29 L.P.R.A. sec. 185b.

**9.** L.P.R.A. sec. 1 y SS.

**10.** Art. 18, 11 L.P.R.A. sec. 19.

**11.** 11 L.P.R.A. sec. 7.